648 P.2d 116

**STATE of Arizona, Appellee,**

v.

**Ruth WATKINS, Appellant.**

**No. 5457.**

Supreme Court of Arizona,
In Banc.

June 22, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Gerald R. Grant, Asst. Attys. Gen., Phoenix, for appellee.

Irwin, Jensen & Irwin by Bruce A. Jensen, Yuma, for appellant.

CAMERON, Justice.

On 4 November 1981, defendant Ruth Watkins was found guilty of first degree murder for the death of Walter Robinson. After an aggravation-mitigation hearing, the trial court sentenced the defendant to life imprisonment without possibility of parole for 25 years. A.R.S. § 13–703. The defendant appeals her conviction. We have jurisdiction pursuant to A.R.S. § 13–4031.

The defendant raises the following issues on appeal:

1. Did the trial court abuse its discretion by permitting the State to impeach the defendant with a prior felony conviction?

2. Did testimony by a police officer that he had observed the defendant in an intoxicated condition on a previous occasion constitute reversible error as a comment on a prior bad act?

3. Did the trial court err in denying defendant's request for a jury instruction on the crime of manslaughter?

The facts necessary for a determination of these issues are as follows. On the morning of 26 June 1981, the defendant and two male companions drove to a grocery store in Yuma, Arizona. The driver of the car went into the store to shop, leaving the defendant in the front seat and the victim, Walter Robinson, in the back. A few minutes later, witness Jesus Torres was leaving the store with his groceries when he saw the defendant standing outside the car pointing a gun at Robinson in the back seat. Mr. Torres testified that the defendant was jabbing the gun at Robinson and shouting, "I'm going to kill you, mother-fucker." Mr. Torres then immediately returned to the store to escort his mother to his car and drove home where he telephoned the police.

When Officer Charles Pulliam arrived at the scene, he found the defendant in the front seat of the car with an open bottle of whiskey in her hand. Robinson was slumped across the back seat with a fatal .22 caliber gunshot wound in his chest. When questioned by Officer Pulliam, defendant remarked, "He must have been very sick, he's throwing up blood." When the driver of the vehicle returned and asked the defendant what had happened, the defendant allegedly said, "Robinson tried to grab me, so I shot him." After her arrest, a search of defendant's purse revealed a .22 caliber revolver which contained five bullets and one spent cartridge.

After a two day trial, the jury returned a verdict of guilty to first degree murder. At the aggravation-mitigation hearing, the trial judge found that one aggravating circumstance existed in that the defendant had previously been convicted of manslaughter in 1973. The trial judge found that the defendant's capacity to appreciate the wrongfulness of her conduct was significantly impaired by her alcoholism and intoxication on the day of the murder and that this mitigating circumstance outweighed the prior aggravating manslaughter conviction. A life sentence was then imposed.

## IMPEACHMENT WITH PRIOR FELONY

■ Before trial, a hearing was held on a defense motion to preclude the admission of defendant's prior conviction for involuntary manslaughter. The judge weighed the probative value of the prior conviction against its potential prejudicial effect as required by Rule 609, Arizona Rules of Evidence, 17A A.R.S. The judge concluded that evidence of the manslaughter conviction would be unduly prejudicial and therefore inadmissible. The judge did, however, find that the fact of a prior felony conviction was probative of the defendant's credibility. The court therefore permitted the State to inquire of the defendant whether she had a prior felony conviction, but the decision precluded the State from inquiring into or mentioning the nature of the felony committed. Over defense counsel's continuing objection, the defendant was asked on cross examination whether she had been convicted of a prior felony. No other inquiry into the nature of the prior offense was attempted.

The defendant argues that the trial court erred in permitting the defendant to be impeached with mention of the prior felony conviction. We do not agree. The rule of evidence dealing with impeachment by evidence of a prior conviction provides:

"Rule 609. Impeachment by Evidence of Conviction of Crime

"(a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record, if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, and if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or (2) involved dishonesty or false statement, regardless of the punishment." Rule 609, Arizona Rules of Evidence, 17A A.R.S.

The rule only requires the trial court to independently weigh the probative value of the prior conviction against the prejudicial effect. In this case, the court did all that

the rule requires. We find no abuse of discretion and no error. *State v. Noble*, 126 Ariz. 41, 612 P.2d 497 (1980); *State v. Dixon*, 126 Ariz. 613, 617 P.2d 779 (App.1980).

## PRIOR BAD ACT

■ The defendant next contends that it was error for the prosecutor to elicit from a State's witness evidence of defendant's prior bad acts. The incident occurred during the testimony of Detective Richard Stallworth. The prosecutor questioned Stallworth about the defendant's state of intoxication on the day of the murder. In attempting to establish a foundation for the detective's opinion on this question, the prosecutor asked if he had observed the defendant for signs of intoxication at any other time. The detective responded, "At one time I did." Defense counsel objected to the question and moved for a mistrial out of the hearing of the jury.

The defendant's argument on this issue is summarized from her brief:

"The jury was left with the clear impression that the Defendant had had some prior criminal difficulty, in that she had been observed by a police detective for signs of intoxication. * * * The jury was left to speculate on the nature of the prior criminal incident. Therefore, given the prejudicial effect of that testimony, and its inability to be cured by an instruction or by any other means, the court was under an obligation to grant a mistrial."

We disagree with defendant's position for two reasons. First, there was no prejudice to the defendant. The defendant's entire defense rested on mental incapacity due to alcoholic intoxication, and she herself testified that she had been an alcoholic since childhood. If anything, Detective Stallworth's remark that he had observed the defendant in an intoxicated condition on another occasion supported the defendant's defense.

Second, Detective Stallworth's remark did not necessarily infer prior criminal conduct on the part of the defendant. Defendant cites *State v. Francis*, 95 Ariz. 57, 386 P.2d 654 (1963) for support. In that case,

we reversed a conviction where the prosecutor had made references to a prior police record without an offer of proof. In *Francis*, supra, the prosecutor asked a witness, "Are you acquainted with any of Mr. Francis' problems with the police?" There is no similarity between Detective Stallworth's remark in this case and the prosecutor's conduct in *Francis*, supra. In *Francis*, supra, there was a strong inference that the defendant had other "problems with the police" which could lead the jury to believe that the defendant was guilty of other crimes. We do not find that to be the case here, where only defendant's drinking problem had been observed by the officer. We find no error.

## MANSLAUGHTER JURY INSTRUCTION

■ In her last assignment of error, the defendant maintains that it was error for the trial court to have refused to instruct the jury on manslaughter. The basis for allowing the instruction, defendant contends, was provided by the following testimony:

"[PROSECUTOR] With the Court's permission, I would like to play this portion of the tape.

(Whereupon the tape recording was played and the following is a transcript of the testimony thereon.)

'McCain: When I went in the store, he was in the back seat, sitting behind her and she sit in the front seat.

'Stallworth: Okay.

'McCain: When I come back out of the store with the groceries, she was still sitting in the front seat and he was laying down on the side of his face, you know, and I said, what happened? She said, "Well, Robinson grabbed me and I shot him."

'Stallworth: She said, "He grabbed me and I shot him?"

'McCain: Yeah, that's what she told me, that's the words she said.' "

We believe the testimony is insufficient to require a manslaughter jury instruction.

**4**

Throughout the trial, the defendant denied shooting the victim or claimed an inability to remember the events on the morning of the murder. There was no evidence that the defendant killed the victim in the heat of passion or with provocation, and the trial court did not err in failing to give defendant's requested instruction on voluntary manslaughter. *State v. Watkins,* 126 Ariz. 293, 614 P.2d 835 (1980); *State v. Heath,* 122 Ariz. 36, 592 P.2d 1302 (App.1979).

Affirmed.

HOLOHAN, C. J., GORDON, V. C. J., and HAYS and FELDMAN, JJ., concur.