698 P.2d 724

**STATE of Arizona, Appellee,**

v.

**Scott Jay WILLIAMS, Appellant.**

**No. 6370.**

Supreme Court of Arizona,
In Banc.

April 24, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Diane M. Ramsey, Asst. Atty. Gen., Phoenix, for appellee.

John A. O'Brien, Tucson, for appellant.

CAMERON, Justice.

Defendant, Scott J. Williams, was convicted and judged guilty of the crime of dangerous or deadly assault by a prisoner. A.R.S. § 13–1206. He was sentenced to a term of life imprisonment under the provisions of pre-amendment A.R.S. § 13–1206. We have jurisdiction pursuant to Art. 6, § 5(3) of the Arizona Constitution and A.R.S. §§ 13–4031 and 13–4035.

Defendant raises the following issues on appeal:

1) Did the trial court err in ruling that defendant's prior convictions were admissible for impeachment purposes?

2) Did the trial court err in refusing to allow the former testimony of an allegedly unavailable witness to be read into evidence?

3) Did the trial judge err in not granting defendant's motion for judgment of acquittal?

4) Did the trial court err in not instructing on lesser-included offenses?

5) Did the legislatively mandated punishment of life imprisonment for dangerous or deadly assault by a prisoner constitute cruel or unusual punishment in violation of the Eighth Amendment of the United States Constitution?

The facts necessary for a determination of this matter are as follows. On 7 September 1983, at approximately 8:00 P.M., Perry Davis, the victim, was using a public telephone located in a yard at the Department of Correction's Wilmot facility.

Words passed between the victim and defendant over the length of time the victim was using the phone. Defendant allegedly then lunged at the victim with a homemade knife or "shank." The victim suffered a stab wound to his chest which necessitated surgery. At trial, although defendant did not testify, his defense was that someone else had done the stabbing. Defendant was convicted by a jury and adjudged guilty. From the judgment and sentence, defendant appealed.

## PRIOR CONVICTIONS

Defendant contends that the trial court abused its discretion in ruling that he could be impeached with his prior felony convictions if he elected to testify.

Our Rules of Evidence state in pertinent part:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record, if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, and if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or (2) involved dishonesty or false statement, regardless of the punishment.

Rule 609(a), Arizona Rules of Evidence, 17A A.R.S.

In the instant case, defendant had prior convictions for first degree murder, A.R.S. § 13–1105 see 133 Ariz. 220, 650 P.2d 1202; dangerous or deadly assault by a prisoner, A.R.S. § 13–1206 see 132 Ariz. 153, 644 P.2d 889; and stealing, destroying, altering, or secreting a public record, A.R.S. § 38–421. In ruling that these prior convictions could be used for impeachment purposes, the trial court made the requisite finding that their probative value outweighed any prejudicial effect. The judge further ruled that the County Attorney could show that defendant was in custody for murder but could only show that defendant was convicted of other felonies without indicating the nature of those felonies.

The court stated:

> I figured that it would lessen the prejudicial effect by allowing the County Attorney only to show that there were [other] felony charges without naming the specific charge.

 We believe that the trial court ruled correctly. The gist of defendant's defense was that some other person stabbed the victim and that, at most, he had a scuffle with the victim not involving weapons. Since this was a question of defendant's credibility, impeachment evidence would have been important to the State had defendant elected to testify. Prejudice was minimal in this case as defendant was charged with a crime (assault by a prisoner) which, by definition, revealed to the jury the fact that he had at least one prior felony conviction. The trial court also mitigated potential prejudice by ruling that the nature of defendant's other prior convictions could not be revealed. That the trial court's ruling may have prevented defendant from testifying is not persuasive. *State v. Gretzler*, 126 Ariz. 60, 85, 612 P.2d 1023, 1048 (1980). We find no error. *State v. McElyea*, 130 Ariz. 185, 188, 635 P.2d 170, 173 (1981).

## FORMER TESTIMONY

Defendant maintains that the trial court erred in refusing to allow the former testimony of an allegedly unavailable witness to be read into evidence.

After the stabbing, corrections officers taped statements of some of the prisoners who had witnessed the incident. The statements were unsworn. One prisoner, Jerry Kennedy, told the officers that he had seen the defendant stab the victim. At the preliminary hearing, Kennedy was called as a witness by the State. He was asked by the State:

Q. (By Mr. Peasley) Did you stab Perry Davis on the 7th of September of 1983?

A. I'm pleading the 5th amendment on that.

Q. You don't even want to say whether you stabbed—

A. No.

The State questioned the witness further and he was at times evasive. There was opportunity for cross-examination by the defendant which he exercised in a limited manner.

Kennedy was listed as a witness by the State. A week before the trial, Kennedy was released from prison. Defendant contacted the state investigator and was told that he did not know Kennedy's whereabouts. Defendant moved to introduce Kennedy's preliminary hearing testimony. The State would only agree to this if the unsworn statement made to the prison officer (Costello) was also admitted. Defendant's attorney stated as to the efforts to locate the witness:

I then met with Mr. Peasley [the prosecutor], I believe, on Wednesday or Thursday preceding the trial and indicated that I had heard the possibility that Mr. Kennedy had been released from DOC.

Mr. Peasley and Ricky Mesa from the County Attorney's office and Investigator Costello followed it up, and indeed he had been released. And DOC, who had him sometime shortly before the trial, no longer knew where he was.

\* \* \* \* \* \*

I said: Do you have any idea, can you locate him?

Mr. Peasley indicated a certain unhappiness at being unable to locate him, being unable to produce him today.

It had been Mr. Peasley's contention, I believe, that he was, \* \* \* that he was going to produce him to testify during the course of this trial. And I was looking forward to that opportunity.

And there was some chagrin on Mr. Peasley's part as not being able to produce him. And Officer Costello indicated to me that he did not know where Mr. Kennedy was.

And if the chief investigator for criminals committed with the Southern Arizona Department of Correction facility don't know where the Department of Corrections people send people when they get released, I don't know how I can find him on three days' notice.

Finding that defendant did not take reasonable steps to locate Kennedy, and that the former testimony did not bear adequate "indicia of reliability," the trial court ruled that defendant could not introduce the former testimony. Defendant claims this was error.

■ The trial court based its ruling upon *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) and *State v. Edwards*, 136 Ariz. 177, 665 P.2d 59 (1983) (adopting Roberts), two cases involving attempts by the State to introduce former testimony of an absent witness. These cases recognize that the State's use of a witness' former testimony may interfere with an accused's Sixth Amendment right to confront adverse witnesses. To accommodate these competing interests, the United States Supreme Court formulated a two-step approach to govern the State's use of former testimony. Before such testimony may be used, the Confrontation Clause requires: 1) proof of a witness' unavailability satisfied by the State showing that it unsuccessfully made a good faith effort to secure his attendance at trial, and 2) adequate "indicia of [the former testimony's] reliability." *Ohio v. Roberts, supra; State v. Edwards, supra.* The trial court herein ruled that defendant failed to meet both tests.

■ In the instant case, however, it was defendant, not the State, who sought to introduce Kennedy's former testimony. Therefore, defendant's Sixth Amendment right to confrontation was not implicated. In order to have had the testimony admitted into evidence, defendant needed only to show that the absent witness was unavailable and that the former testimony was material and given under oath and under circumstances which provided an opportunity for adequate cross-examination. *See*

*McCormick on Evidence* § 254 (F. Cleary 3d ed. 1984).

■ We believe that defendant has shown a good faith attempt to locate the witness. Defendant had a right to assume that the State would secure Kennedy's attendance at trial because he was listed as a State's witness. As soon as defendant learned Kennedy might not be available, he contacted the State's investigator to see if he knew of Kennedy's whereabouts. By then it was too late to take other steps to locate the witness. Considering the relative resources of the State and defendant and the fact that the State released the witness and could not find him either, we believe defendant satisfied the good faith requirement in trying to locate the witness. *See State v. Pereda*, 111 Ariz. 344, 529 P.2d 695 (1974).

■ Defendant has also shown that the testimony which was given under oath subject to cross-examination exhibited an adequate indicia of reliability. *Ohio v. Roberts, supra; State v. Edwards, supra.* We might not agree that the testimony should have been admitted if it had been offered for the sole purpose of showing that the witness invoked the Fifth Amendment. *State v. McDaniel*, 136 Ariz. 188, 193–95, 665 P.2d 70, 75–77 (1983); *see also State v. Corrales*, 138 Ariz. 583, 589–91, 676 P.2d 615, 621–23 (1983). The testimony, however, was indicative of much more and we believe the court erred in excluding it. The error did not, however, reasonably contribute to the conviction. *See Fahy v. Connecticut*, 375 U.S. 85, 86, 84 S.Ct. 229, 230, 11 L.Ed.2d 171, 173 (1963). In addition to the isolated taking of the Fifth Amendment, the testimony of the witness implicated the defendant in several aspects. For example:

Q. Could you see Mr. Williams that evening when you saw Mr. Davis talking on the telephone?

A. Yes.

\* \* \* \* \* \*

Q. At some time did you see Mr. Williams go over by the telephone where Perry Davis was?

A. Yes.

Q. Okay, did you see something happen between Mr. Williams and Perry Davis?

A. I just as soon not answer that.

MR. PEASLEY: I will ask the Court to direct the witness to answer the question.

THE COURT: Why don't you answer?

THE WITNESS: I'm pleading the 5th amendment.

\* \* \* \* \* \*

Q. Has Mr. Williams talked to you about making a shank?

A. I don't wish to answer that at this time.

Q. Has Mr. Williams in fact made a shank for you like the one he used on Perry Davis?

A. I don't want to answer that.

Q. Have you seen Mr. Williams at a time when he was down there on the grinder when he was in fact working on making a shank like the one he used to stick in Perry Davis?

\* \* \* \* \* \*

THE WITNESS: I'm pleading the 5th amendment to these questions.

Q. (By Mr. Peasley) Did you stab Perry Davis on the 7th of September of 1983?

A. I'm pleading the 5th amendment on that.

\* \* \* \* \* \*

Q. Did you get in any kind [of] fight with Perry?

A. No.

\* \* \* \* \* \*

Q. Didn't you talk to Mr. Costello and say that you were aware of the fact that Perry Davis got stabbed and was bleeding all over himself that night, you knew that?

A. Yes, later on, not right away.

Q. And you knew that was as a result of something that happened near the telephone booth where he was standing there talking?

A. Yes.

Q. Did you see Perry Davis bleeding all over himself at the Wilmot facility?

A. In the chow hall where he went and laid down.

Q. You saw him there?

A. Yes.

Q. Did you see Mr. Williams at that time, what he was doing?

A. Yes.

Q. What was he doing?

A. Correctional officers was taken him to his cell to lock him up.

Q. Didn't you ever talk to Mr. Williams about trying to hide this shank that he used on Perry Davis?

A. No, sir.

Q. Didn't you stand guard at the door of a storage room while Mr. Williams was back there grinding away at making a shank?

A. I'm not going to answer that.

Q. Didn't you see Mr. Williams stab Perry Davis while he was standing at the telephone booth?

A. No, sir.

Q. You never saw that?

A. No, sir.

Q. Did you see Mr. Williams make a motion with his hand towards Mr. Davis immediately before Mr. Davis showed up with blood all over the front of him?

A. I never saw Davis with blood all over him until he was in the chow hall.

Q. Did you see a fight between Mr. Williams—

A. There was a confrontation, yes.

Q. Tell us what you mean by confrontation?

A. They were wrestling around a little bit. Between each other.

Q. Okay, when they were wrestling around between each other was it on the ground or standing up?

A. They were standing up.

Q. During this period of time when they were wrestling around with one another didn't you see Mr. Williams making stabbing motions with his hand towards Mr. Davis?

A. Not stabbing motions, I seen him moving his hands forward.

Q. Why don't you show us, demonstrate if you would what kind of motions you saw Mr. Williams making at Mr. Davis just before Mr. Davis got stabbed?

A. Just like he was trying to punch at him it looked to me.

The rest of the testimony was damaging to defendant's case. Although it was error to exclude the evidence, the error was harmless beyond a reasonable doubt. *See Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 711 (1967); *State v. McVay*, 127 Ariz. 450, 622 P.2d 9 (1981).

### SUBSTANTIAL EVIDENCE

Defendant maintains that the trial court erred in failing to grant his motion for a judgment of acquittal made at the end of the evidence but prior to verdict pursuant to Rule 20(a), Arizona Rules of Criminal Procedure, 17 A.R.S. We do not agree.

Rule 20(a) provides:

On motion of a defendant or on its own initiative, the court shall enter a judgment of acquittal of one or more offenses charged in an indictment, information or complaint after the evidence on either side is closed, if there is no substantial evidence to warrant a conviction. The court's decision on a defendant's motion shall not be reserved, but shall be made with all possible speed.

Under this rule, a judgment of acquittal must be granted if there is no substantial evidence to warrant a conviction. *State v. Hallman*, 137 Ariz. 31, 38, 668 P.2d 874, 881 (1983). If there is, however, substantial evidence that the defendant committed the crimes as charged, the defendant is not entitled to have the court

direct a verdict of acquittal. *State v. Axley*, 132 Ariz. 383, 393, 646 P.2d 268, 278 (1982).

■ We believe that there was sufficient evidence to support defendant's conviction. Although the victim testified that he did not see a knife in defendant's possession, he stated that defendant struck him in the approximate area of his stab wound and that he momentarily noticed blood running down his side. His testimony also included the fact that no one else was within fifteen feet of him during the scuffle. Additionally, it was adduced at trial that the weapon used in the assault had been machine sharpened and that defendant had access to a power grinder. Metallic powder residue found on this machine showed characteristics similar to the metallic composition of the knife. The jury also heard evidence that the knife's handle was wrapped in tape similar to that found in defendant's personal belongings. Although defendant turned the weapon over to a corrections officer claiming that the victim had attacked him with it, the officer testified that defendant later said, "I had to put an end to all this." This evidence was sufficient for a jury to find that defendant committed an assault in violation of A.R.S. § 13–1206. We find no error.

## LESSER–INCLUDED INSTRUCTIONS

Defendant argues that the trial court erred in not giving instructions on simple and aggravated assault.

■ "An offense is a lesser included one only where the greater offense cannot be committed without necessarily committing the lesser." *State v. Amarillas*, 141 Ariz. 620, 623, 688 P.2d 628, 631 (1984). An instruction on a lesser included offense need not be given, however, when the evidence will not support it. *See State v. Noriega*, 142 Ariz. 474, 481, 690 P.2d 775, 782 (1984). Thus, a lesser-included offense instruction may not be given when the state of the evidence is such that the defendant can only be guilty of the crime charged or not guilty at all. *State v.*

*Lamb*, 142 Ariz. 463, 472, 690 P.2d 764, 773 (1984).

The elements of A.R.S. § 13–1206, dangerous or deadly assault by a prisoner, are: 1) a person in the custody of the Department of Corrections, 2) commission of an assault, and 3) use of a deadly or dangerous instrument, or infliction of serious physical injuries. The elements of aggravated assault, A.R.S. § 13–1204, are the same except that the accused need not be in custody. Simple assault, A.R.S. § 13–1203, is further distinguished insofar as the offense need neither to have been committed with a deadly or dangerous instrument nor result in serious physical injuries.

■ In the instant case, it is undisputed that defendant was in the custody of the Department of Corrections when the offense was committed. Furthermore, the victim suffered a stab wound. If defendant was guilty of an assault, it was both aggravated and while in custody. If guilty, the defendant could only be guilty of the offense charged. *See, e.g., State v. Tims*, 143 Ariz. 196, 693 P.2d 333 [1985] (aggravated assault instruction not warranted where it was undisputed that the defendant was in the custody of the Department of Corrections and the only issue to be decided was one of identity). We find no error.

## CONSTITUTIONALITY OF
## A.R.S. § 13–1206

Defendant's final contention is that A.R.S. § 13–1206 mandated a constitutionally excessive sentence under the facts of this case.

■ Defendant cites us to the test set forth by the United States Supreme Court for determining whether a sentence is constitutionally excessive. That test considers: 1) the gravity of the offense, 2) the harshness of the penalty, 3) the sentence imposed on similarly situated defendants in the same jurisdiction, and 4) the sentence imposed for commission of the same crime in other jurisdictions. *Solem v. Helm*, 463

U.S. 277, ——, 103 S.Ct. 3001, 3010, 77 L.Ed.2d 637, 650 (1983).

In *State v. Garcia*, 141 Ariz. 97, 685 P.2d 734 (1984), we conducted the analysis mandated by Solem in a situation in which a prisoner used a metal bar to threaten, but not injure, corrections officers. We upheld the constitutionality of the statute under those circumstances. The instant case presents a stronger fact pattern for upholding the constitutionality of A.R.S. § 13–1206 insofar as the victim sustained serious physical injuries. *See State v. Goswick*, 142 Ariz. 582, 691 P.2d 673 (1984) (penalty not disproportionate as applied to an inmate who stabbed another using a sharpened welding rod). We find the sentence is neither excessive nor disproportionate. We find no error.

We have reviewed the entire record pursuant to A.R.S. § 13–4035 and have found no reversible error. The judgment and sentence are affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.