70 P.3d 463

**STATE of Arizona, Appellee,**

v.

**Thaddeus J. BEASLEY, Appellant.**

No. 1 CA–CR 01–0783.

Court of Appeals of Arizona,
Division 1, Department B.

June 12, 2003.

Hall, P.J., concurred in the result and filed opinion.

Terry Goddard, Attorney General, By Randall M. Howe, Chief Counsel, Criminal Appeals Section and Joseph T. Maziarz, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Susan Sherwin, Office of the Legal Advocate, By Thomas J. Dennis, Phoenix, Attorneys for Appellant.

**OPINION**

FOREMAN, Judge.[1]

¶ 1 Thaddeus J. Beasley ("defendant") was found guilty, following a jury trial, of four counts of aggravated assault, two against police officers. The jury did not reach a verdict on a separate charge of attempted murder. He was sentenced to terms of seventeen years on Counts I and III (class 3 dangerous felonies with one dangerous prior conviction) and twenty-three years on Counts II and IV (class 2 dangerous felonies with one dangerous prior conviction). The sentences were ordered to run concurrent with each other but consecutive to sentences he received in other cases.

¶ 2 The defendant has appealed his convictions and sentences in this case. This Court has jurisdiction. Ariz. Const. art. 2, § 24; art. 6, § 9; Ariz.Rev.Stat. (A.R.S.) §§ 12–120.21(A)(1) (1992), 13–4031, –4033 (2001).

---

1. The Honorable John Foreman, Judge of the Maricopa County Superior Court, has been authorized to participate in this appeal by order of the Chief Justice of the Arizona Supreme Court pursuant to Arizona Constitution, Article 6, Section 31, and A.R.S. §§ 12–145 to –147 (1992 and Supp.2002).

For the following reasons, we affirm in part, vacate in part, and remand.

## I. Factual Background

¶ 3 The defendant was mistakenly released from the Maricopa County Jail in mid-May 2000 while he was awaiting trial on other charges. As he later told arresting officers, the Maricopa County Jail was much worse than the other jails and prisons in which he had done time, and the defendant had no desire to go back.

¶ 4 The defendant's continued freedom eventually attracted the attention of a joint warrant unit of the Phoenix Police Department, Maricopa County Sheriff's Office, and Federal Bureau of Investigation. On June 28, 2000, the officers spotted the defendant and started to follow him as he drove a Jeep with a passenger through west central Phoenix. When the defendant became aware of the officers, he led them, as well as additional marked police cars, motorcycle officers, and a police helicopter on a dangerous, high speed chase that ended with the defendant cornered in a used car lot.

¶ 5 During the chase, the defendant fired a pistol at the officers as well as two men in a pickup who happened to drive into his path. The officers did not return fire during the chase to avoid injury to the public. When the defendant was unable to find a way out of the car lot, he turned the Jeep toward the officers and began firing directly at them. They finally returned fire. The defendant and his passenger were both wounded in the exchange that followed.

¶ 6 During the subsequent investigation, a 9mm Ruger pistol was found in the front seat floor area of the Jeep, wedged against the side console. It had an extended magazine with nine bullets in it, and another bullet chambered in the gun. The magazine held twenty-seven rounds when full and another empty magazine was found nearby. An Intertec 9mm ("Tec-9") was also found in the Jeep with a shell jammed between the magazine and the breach. No identifiable fingerprints were obtained from either weapon.

¶ 7 Several 9mm shell casings were found in and around the Jeep. More 9mm shell casings and bullet fragments were found along the route of the chase and in cars involved in the pursuit. One bullet fragment was taken from the tailgate of the pickup that had inadvertently impeded the defendant's flight; another bullet was found in the rear tire of a vehicle driven by one of the officers; still another officer's vehicle contained two bullet holes and had its passenger window shot out. Nearly all of the bullet fragments and shell casings were either directly tied to, or at least consistent with, being fired from the Ruger. None of these were linked to the Tec–9.

## II. Gunshot Residue Tests

¶ 8 After his arrest, the defendant's hands were bagged and he was taken to the hospital so he could receive treatment for his wounds. Before he went into surgery, a detective swabbed his hands to obtain samples for a gunshot residue ("GSR") test. Prior to trial, the defendant moved in limine to prevent the admission of the GSR results, which revealed gunshot residue particles on his left hand. On appeal, the defendant argues the tests constituted a search and therefore a valid warrant was required.

¶ 9 The trial court carefully considered the matter and found that a warrant was not necessary, as the test was neither invasive nor intrusive, and the defendant did not object to it. We review the facts in the light most favorable to sustaining the trial court's ruling on a motion to suppress and will not disturb that ruling absent clear and manifest error. *State v. Hyde,* 186 Ariz. 252, 265, 921 P.2d 655, 668 (1996). However, we review de novo the ultimate legal question whether the defendant's constitutional rights were violated. *State v. Adams,* 197 Ariz. 569, 572, ¶ 16, 5 P.3d 903, 906 (App.2000). Moreover, "[w]e may affirm on any basis supported by the record." *State v. Robinson,* 153 Ariz. 191, 199, 735 P.2d 801, 809 (1987).

¶ 10 We agree with the defendant that the swabbing of his hands constituted a search:

> Although the matter is not absolutely free from doubt, it may be that other searches of the body which likewise do not involve an intrusion into the body may be under-

taken whenever there is lawful custody. The courts, often by analogy to the finger-printing cases, have upheld such warrant-less searches rather regularly. Among the search procedures which have been upheld are swabbing the arrestee's hands with a chemical substance....

3 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 5.3(c), at 132 (3d ed.1996) (footnotes omitted); *see also State v. Trull,* 153 N.C.App. 630, 571 S.E.2d 592, 598–99 (2002); *State v. Coplen,* 530 S.E.2d 313, 318–19 (N.C.Ct.App.2000). In this case, no warrant was required for a reasonable search incident to a valid arrest. *See State v. Lopez,* 198 Ariz. 420, 421, ¶ 8, 10 P.3d 1207, 1208 (App.2000). Probable cause obviously existed to arrest the defendant for the shootings. Any legitimate expectation of privacy the defendant had was substantially diminished by that arrest.

¶ 11 Moreover, any burden imposed upon the defendant's already diminished privacy interest as a result of the GSR test was slight. The swabbing was less invasive than fingerprinting which may occur hours after an arrest. *See State v. Via,* 146 Ariz. 108, 113, 704 P.2d 238, 243 (1985). And, given the circumstances under which the defendant was taken into custody, his injuries, trans-portation to the hospital, and impending sur-gery, the swabbing occurred within a reason-able amount of time after his capture and arrest. *See State v. Amaya–Ruiz,* 166 Ariz. 152, 170, 800 P.2d 1260, 1278 (1990). The defendant was also notified that the swab-bing was going to occur. He acquiesced and asked only that the detective be careful to avoid causing further pain to his wounds.

¶ 12 Under the circumstances of this case, the search of the defendant's person by swabbing for gunshot residue after arrest was reasonable.

### III. Admission of the Defendant's Statements

¶ 13 The defendant urged the trial court to suppress statements he made to arresting officers that he fled because he had been mistakenly released from jail and did not want to return. He claimed the statements referred to prior bad acts that were both irrelevant and prejudicial. *See* Ariz. R. Evid. 404(b).

¶ 14 We review the admission of prior act evidence under Rule 404(b) for abuse of discretion. *State v. Van Adams,* 194 Ariz. 408, 415, ¶ 20, 984 P.2d 16, 23 (1999). We find no abuse of discretion here. Evidence of prior acts is admissible if relevant and admit-ted for a proper purpose, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Ariz. R. Evid. 404(b); *Van Adams,* 194 Ariz. at 415, ¶ 20, 984 P.2d at 23. At trial, the state argued the statements were admissible to explain the motive for the de-fendant's actions. Our supreme court has affirmed the admission of similar statements to explain the motive of a defendant for fleeing and shooting a police officer. *State v. Martinez,* 196 Ariz. 451, 459, ¶ 31, 999 P.2d 795, 803 (2000).

¶ 15 The defendant also complains the trial court did not make explicit findings that balanced the probative value of the evidence against the unfair prejudice. However, ex-plicit findings are not necessary when it is clear the necessary factors were argued, con-sidered, and balanced by the trial court as part of its ruling. *State v. Poland,* 144 Ariz. 388, 400, 698 P.2d 183, 195 (1985). Here, the transcript of the hearing on this issue indi-cates the parties argued both the probative value and any unfair prejudice that could result from admission of the statements. The record also shows the trial court clearly balanced these competing factors in conclud-ing the evidence was admissible. We find no error.

### IV. Evidence of the Nature of the Defendant's Prior Convictions

¶ 16 Next the defendant argues the trial court abused its discretion by allowing the state to impeach him, not only with the fact of his multiple prior felony convictions, but also with the nature of those offenses. *See* Ariz. R. Evid. 609. Specifically, the trial court ruled the state could impeach the de-fendant with six prior convictions, if he testi-fied, as follows:

So we are going to be talking about the 1994 armed robbery, the 1998 aggravated assault of a police officer, the 2001 aggravated assault on a police officer and resisting arrest, and the 2001 conviction for two counts of aggravated assault relative to his brother's shooting. *And those don't need to be sanitized.*

(Emphasis added).[2]

¶ 17 At trial, the prosecutor questioned the defendant about seven priors: an armed robbery, four prior aggravated assaults, and convictions for misconduct involving weapons and resisting arrest. The misconduct involving weapons conviction had not been discussed by the trial court and counsel outside the presence of the jury, but it was raised by defense counsel on direct examination. The state, also without objection, questioned the defendant concerning the length of his prison sentences for the crimes.

¶ 18 Although the trial court did sustain an objection to a prosecution question concerning the defendant's status as a prohibited possessor of weapons, the court allowed the prosecutor, over a defense objection, to establish in front of the jury that two of the defendant's prior aggravated assault convictions were committed against his brother.

¶ 19 We review the admission of prior convictions under Rule 609 for abuse of discretion. *State v. Watkins,* 133 Ariz. 1, 2–3, 648 P.2d 116, 117–18 (1982). Impeachment of a witness with a prior felony conviction is allowed because any felony conviction is thought to bear upon the credibility of the witness. *See generally* Joseph M. Livermore, Robert Bartels, & Anne Holt Hameroff, *Law of Evidence* § 609.1 (4th ed. 2000) ("*Arizona Law of Evidence*"). However, in deciding whether to reveal the *nature* of the defendant's offenses to the jury, the court must balance the probative value of the conviction as to the defendant's credibility against the very real possibility that the jury may misuse this information to the defendant's prejudice:

The danger of unfair prejudice under Rule 609(a) is at its highest when the witness being impeached is the defendant in a criminal case and the prior conviction is the same as, or similar to, the crime for which the defendant [is] on trial. When the defendant/witness's prior conviction did not involve "dishonesty or false statement," its probative value on the issue of the defendant's credibility as a witness is relatively low—and if the prior conviction also is for a crime that is the same as or very similar to that for which the defendant is on trial, it will ordinarily be difficult to see how the impeaching party can meet its burden to show that probative value outweighs prejudicial effect.

*Arizona Law of Evidence,* § 609.1(I), at 236; *Accord,* Carl McGowan, *Impeachment of Criminal Defendants by Prior Convictions,* 1970 Law & Soc. Order 1.

¶ 20 The United States Supreme Court came to a like conclusion in balancing the similar factors of Rule 403 of the Federal Rules of Evidence. *Old Chief v. United States,* 519 U.S. 172, 191, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). In *Old Chief,* the defendant was charged with the prohibited possession of a firearm by virtue of his status as a convicted felon. Although the defendant offered to stipulate to the fact of a prior conviction, the trial court allowed the government to decline the stipulation and prove the prior conviction was for assault causing serious bodily injury. *Id.* at 175–77, 117 S.Ct. 644. In reversing, the Supreme Court found the trial court abused its discretion by allowing the government to prove the nature of the prior offense. It observed:

In this case, as in any other in which the prior conviction is for an offense likely to support conviction on some improper ground, the only reasonable conclusion was that the risk of unfair prejudice did substantially outweigh the discounted probative value of the record of conviction, and it

**2.** The concurrence concludes "a trial court substantially complies with Rule 609(a) by making an on-the-record finding, based on the information presented, that the probative value of the evidence outweighed its prejudicial effect." *In-* *fra* ¶ 37. We are unable to find any "on-the-record finding" weighing the factors necessary to make a Rule 609(a) determination in the record of this case.

was an abuse of discretion to admit the record when an admission was available. 519 U.S. at 191, 117 S.Ct. 644 (footnote omitted).

¶ 21 Rule 609(a) allows the impeachment of a testifying defendant with a prior conviction if the trial court determines "the probative value of admitting this evidence outweighs its prejudicial effect...." In contrast, Rule 403 allows the trial court to exclude evidence if "its probative value is *substantially* outweighed by the danger of *unfair* prejudice...." (Emphasis added.). Thus, under Rule 609, the defendant is not required to demonstrate that the prejudice of the impeachment is "unfair" or that the prejudice of the impeachment "substantially" outweighs its probative value.

¶ 22 In discussing Rule 403, the United States Supreme Court in *Old Chief* concluded that the "general rule when proof of convict status is at issue" is that the unfair prejudice arising from proof of the nature of the prior does substantially outweigh its probative value. 519 U.S. at 192, 117 S.Ct. 644. In Arizona, in applying a Rule 609(a) analysis to the same type of evidence, our supreme court has said:

[A] trial court should sparingly admit evidence of prior convictions when the prior convictions are similar to the charged offense; or in appropriate cases, the trial court may reduce the risk of prejudice by admitting the fact of a prior conviction without disclosing the nature of the crime.

*State v. Bolton,* 182 Ariz. 290, 303, 896 P.2d 830, 843 (1995); *see also State v. Williams,* 144 Ariz. 479, 482, 698 P.2d 724, 727 (1985); *State v. Williams,* 144 Ariz. 433, 438, 698 P.2d 678, 683 (1985); *Watkins,* 133 Ariz. at 2–3, 648 P.2d at 117–18.

¶ 23 The concurrence attempts to avoid the application of *Bolton* in this case by suggesting "[w]ith the possible exception of *Bolton,* in which the Arizona Supreme Court never reached the 'close question' whether the trial court abused its discretion because it concluded that any error was harmless, 182 Ariz. at 303, 896 P.2d at 843, Arizona case law is bereft of any support for the majority's contrary conclusion...." *Infra* ¶ 40. We do not feel we can so easily disregard the very

pointed admonition to lower courts contained in the Arizona Supreme Court's opinion in *Bolton.* We are not persuaded by the citation in the concurrence of older Arizona cases inconsistent with *Bolton* or the three cases from states in the small minority who limit the use of sanitized priors. *Infra* ¶¶ 40–41. Our supreme court has chosen to follow the majority of states who do encourage the use of sanitization. The court has taken the trouble to explicitly warn against the use of prior convictions as impeachment which are similar to the charge against the defendant. *Bolton,* 182 Ariz. at 303, 896 P.2d at 843. We are bound to follow its lead. The defendant in *Bolton* and the defendant in this case were impeached with violent, similar prior convictions.

¶ 24 It is true the jury was given a limiting instruction concerning the appropriate use of the defendant's prior convictions in this case. However, the available research indicates juries have great difficulty in following limiting instructions about the use of prior convictions of defendants charged with crimes similar to the prior convictions, particularly when such offenses are violent. Roselle L. Wissler & Michael J. Saks, *On the Inefficacy of Limiting Instructions: When Jurors Use Prior Conviction Evidence to Decide on Guilt,* 9 Law & Hum. Behav. 37, 41–47 (1985); Robert D. Dodson, *What Went Wrong With Federal Rule of Evidence 609: A Look at How Jurors Really Misuse Prior Conviction Evidence,* 48 Drake L.Rev. 1, 31–44 (1999). Indeed, even the state conceded in a pretrial hearing on prior act evidence that the jury could be improperly swayed by such evidence: "Now, if they were to hear what all he had done, the State would agree that would be highly prejudicial."

¶ 25 In addition, the defendant correctly points out the trial court here never made findings of fact balancing the probative value of impeachment with the nature of the offenses against the prejudicial effect. Explicit findings are preferable but not necessary when the basis for the trial court's ruling appears in the record. *Williams,* 144 Ariz. at 439, 698 P.2d at 684. If the trial court had followed the Arizona Supreme

Court's admonition in *Bolton* to "sparingly admit evidence of prior convictions when the prior convictions are similar to the charged offense," we could easily conclude from the record the trial court did not abuse its discretion. However, the trial court neither followed the Arizona Supreme Court's admonition nor made formal findings. And, nothing in the record provides a basis for disregarding the supreme court's admonition. We must therefore reluctantly conclude the trial court did abuse its discretion in failing to preclude impeachment of the defendant with the nature of his prior convictions.

¶ 26 Our concurring colleague mistakenly believes we "impose a new requirement on trial court judges." *Infra* ¶ 35. We do not. We only require that trial courts, if they are not going to make explicit Rule 609(a) findings, exercise their discretion in a manner consistent with the direction provided by the Arizona Supreme Court. *Bolton,* 182 Ariz. at 303, 896 P.2d at 843. If the trial court follows the direction contained in *Bolton,* no explicit findings are necessary and we will infer the necessary findings from the record. However, if the trial court does not follow the direction set by our supreme court, it must provide some basis for a reviewing court to determine whether it has abused its discretion. We cannot draw an inference appropriate findings were made and an appropriate balancing of factors was used in ruling on Rule 609(a), as the concurrence does, when the ruling is contrary to the suggestion of the Arizona Supreme Court and the reasons for the ruling are not made explicit. It is the concurrence that would stretch the case law construing Rule 609(a) to include a willingness to infer appropriate findings and balancing for a ruling against which our supreme court has warned trial courts "the potential for prejudice is particularly strong." 182 Ariz. at 303, 896 P.2d at 843. Stretching the Rule 609(a) case law to infer appropriate findings and balancing for rulings against which trial courts have been warned would render meaningless the process of balancing findings called for by the rule.

¶ 27 Despite finding an abuse of discretion, we may still affirm the action of the trial court if the error is harmless beyond a reasonable doubt. *State v. Dunlap,* 187 Ariz. 441, 456, 930 P.2d 518, 533 (App.1996). That is the case here. The defendant was literally caught with a smoking gun. Only one gun found in the car after the shootout with police had been used. The defendant had gunpowder residue on his left hand and was identified by several witnesses as both the driver of the vehicle and the person aiming and firing the weapon. The defendant told police after his arrest that the passenger in the Jeep "had nothing to do with nothing." At trial, he again refused to implicate the other occupant of the vehicle. We therefore conclude beyond a reasonable doubt that the error of the trial court was harmless. The concurrence correctly notes the Arizona Supreme Court uses a harmless error analysis in *Bolton.* The defendant in *Bolton* testified and his testimony allowed the jury to make the same inferences it could have made from admission of the unsanitized priors. The result is the same in this case for similar reasons. The defendant's testimony coupled with the overwhelming evidence of guilt allows the finding of harmless error in this case.

## V. Passenger's Excited Utterance

¶ 28 The defendant alleges it was error for the trial court to have allowed into evidence a statement made by the passenger in the Jeep as an excited utterance under Rule 803(2) of the Arizona Rules of Evidence. At the hospital emergency room, approximately thirty minutes after being shot in the chest and hand, the passenger made the unsolicited statement, "I got shot for no reason, but I don't want to sue. I just want this to be over."

¶ 29 We review the admission of evidence under Rule 803(2) for abuse of discretion. *State v. Taylor,* 196 Ariz. 584, ¶ 18, 2 P.3d 674 (App.1999). In order to admit hearsay under the excited utterance exception, "(1) there must have been a startling event; (2) the statement must relate to the startling event; and (3) the statement must be made spontaneously, that is, soon enough after the event so as not to give the declarant time to fabricate." *State v. Anaya,* 165 Ariz. 535, 538, 799 P.2d 876, 879 (App.1990).

¶ 30 The spontaneity of a statement is determined from the totality of the circumstances. Among the elements usually examined are the length of time between the event and statement, the physical and emotional condition of the declarant, and the nature of the offense. *Id.* at 539, 799 P.2d at 880. The physical and emotional condition of the declarant at the time the statement is made affects spontaneity more than the passage of time. *Id.* A hearsay statement may be admitted as an excited utterance if, under the totality of the circumstances, the declarant may be considered to have made the statement under the stress of nervous excitement. *State v. Hernandez,* 191 Ariz. 553, 558, ¶ 15, 959 P.2d 810, 815 (App.1998). Moreover, evidence that a declarant still appeared nervous or distraught and that there was a reasonable basis for "continuing emotional upset" can constitute sufficient proof of spontaneity even when the interval between the startling event and the statement is long enough to permit reflective thought. *Anaya,* 165 Ariz. at 540, 799 P.2d at 881.

¶ 31 The defendant claims the passenger was "calm" at the hospital. The record does not support that contention. Although he was less excited at the hospital than he was at the scene immediately after he was shot, the passenger was still in the process of having a bullet removed from his chest and facing an operation to repair his hand. Although the statement at the hospital was, perhaps, a "less excited" utterance than had it been made immediately after the passenger was shot, we conclude that it was nevertheless made after a startling event and before the declarant had time to fabricate or reflect. Ariz. R. Evid. 803(2); *Arizona Law of Evidence* § 803.2, at 348–50. Because the statement satisfies all the requirements of Rule 803(2), the trial court did not abuse its discretion in admitting it as an excited utterance.

### VI. Sentence Enhancements Under A.R.S. § 13–604(R)

¶ 32 Prior to trial, the state filed an allegation pursuant to A.R.S. § 13–604(R) that the defendant committed the offenses while on release status from the commission of other felony offenses. At sentencing, the prosecutor informed the trial court, and defense counsel agreed, that two years must be added to each of the defendant's sentences pursuant to A.R.S. § 13–604(R).

¶ 33 Although the trial court did not explicitly state it was adding the two-year sentence enhancements pursuant to A.R.S. § 13–604(R) at the oral pronouncement of sentence, and subsection (R) of 13–604 is not cited in the sentencing minute entry, it appears from the record that such an enhanced sentence was imposed. Because *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *State v. Gross,* 201 Ariz. 41, 44, ¶ 9, 31 P.3d 815, 818 (App.2001) require that the issue of a defendant's release status for sentence enhancement purposes be tried to a jury rather than a judge, we vacate the two-year enhancements to the defendant's sentences and remand the case for a jury trial on the release status issue.

### VII. Conclusion

¶ 34 For the above reasons, the defendant's convictions and sentences, except for the two-year sentence enhancements made pursuant to A.R.S. § 13–604(R), are affirmed. We vacate those sentence enhancements and remand this case for a jury trial on the release status issue.

CONCURRING: JOHN C. GEMMILL, Judge.

HALL, Presiding Judge, concurring in the result.

¶ 35 In Part IV of its opinion, my colleagues impose a new requirement on trial court judges considering whether to permit impeachment of a criminal defendant with previous felony convictions pursuant to Rule 609(a). Henceforth, "in deciding whether to reveal the *nature* of the defendant's offenses to the jury [a trial court] must balance the probative value of the conviction" against "the very real possibility that the jury may misuse this information to the defendant's prejudice." *Ante* ¶ 19. The majority then concludes that the trial court, because it did not make "formal findings" that the proba-

tive value of impeachment with the nature of the offenses outweighed the prejudicial effect, abused its discretion by not "sanitizing" defendant's felony convictions. I respectfully disagree with my colleagues' construction of Rule 609(a).

¶ 36 My analysis begins with the language of Rule 609(a):

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record, if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, and if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted or (2) involved dishonesty or false statement, regardless of the punishment.

Clearly, the language of the rule does not support the majority's dictate that a trial court must either sanitize a conviction that is otherwise admissible under Rule 609(a) or justify its reasons for failing to do so. In contrast, Rule 609(b) provides that a remote conviction is inadmissible unless the court finds that "the probative value of the conviction supported by *specific facts and circumstances* substantially outweighs its prejudicial effect." (Emphasis added.) Thus, under Rule 609(b), remote convictions should be admitted "very rarely and only in exceptional circumstances." *State v. Green,* 200 Ariz. 496, 499, ¶ 11, 29 P.3d 271, 274 (2001) (quoting S.Rep. No. 93–1277, at 15 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7051, 7061–62). In effect, the majority amends Rule 609(a) by adding Rule 609(b)'s more restrictive "specific facts and circumstances" requirement.

¶ 37 Neither does Arizona case law construing Rule 609(a) support the majority's analysis. Before today's decision, the manner in which a trial court should conduct a hearing to determine the admissibility of prior convictions for impeachment was well-settled. The state provided the trial court with the date, nature, and place of the convic-

tion, and any other relevant circumstances. *Williams,* 144 Ariz. at 438, 698 P.2d at 683. The defendant was then permitted to rebut the state's showing by pointing out the prejudicial effect of the evidence. *Id.* In determining admissibility, the trial court considered a myriad of relevant factors, including the remoteness of the conviction, the nature of the prior felony, the length of the former imprisonment, the age of the defendant, his or her conduct since the prior offense, the similarity between the past and present crimes, the importance of defendant's testimony, and the centrality of defendant's credibility to the issues in the case. *See id.; State v. Noble,* 126 Ariz. 41, 43, 612 P.2d 497, 499 (1980). The better procedure is for the trial court to enumerate the specific facts and circumstances upon which its ruling is based, *see State v. Ellerson,* 125 Ariz. 249, 252, 609 P.2d 64, 67 (1980), but a trial court substantially complies with Rule 609(a) by making an on-the-record finding, based on the information presented, that the probative value of the evidence outweighed its prejudicial effect. *See State v. Poland,* 144 Ariz. 388, 400, 698 P.2d 183, 195 (1985); *Williams,* 144 Ariz. at 439, 698 P.2d at 684; *State v. Sullivan,* 130 Ariz. 213, 217, 635 P.2d 501, 505 (1981).

¶ 38 The hearing conducted by the trial court in this case substantially complied with the procedure set forth above. The state met its initial burden by showing the date, place, and nature of the prior convictions. The defendant then attempted to rebut the state's showing by arguing that the court: (1) should limit the *number*[3] of defendant's felony convictions that could be used to impeach his testimony and (2) should not permit the *nature* of the convictions to be revealed to the jury. The court, after specifically referring to the Rule 609 criteria (probative value versus prejudicial effect), permitted the state to impeach defendant with six named convictions. The court impliedly excluded any evidence regarding defendant's two convictions for misconduct involving weapons, presumably because it considered the nature of those convictions too prejudicial. It also de-

---

3. Defense counsel believed defendant had nine prior felony convictions; the record on appeal

supports the existence of only eight.

nied defendant's request that the six admissible convictions be sanitized.

¶ 39 Thus, after considering defendant's request to limit the prejudicial effect of his prior felony convictions, the court granted his request in part and denied it in part. In doing so, the trial court clearly acted within its considerable discretion. *See State v. Perkins,* 141 Ariz. 278, 284, 686 P.2d 1248, 1254 (1984), *overruled on other grounds by State v. Noble,* 152 Ariz. 284, 731 P.2d 1228 (1987) ("[W]e will not upset a trial court's ruling so long as the record shows that the court carefully considered the matter."). Further, unlike the majority, I am unwilling to discard the presumption that the jury followed the limiting instruction given by the trial court. *See State v. Brito,* 183 Ariz. 535, 538, 905 P.2d 544, 547 (App.1995).

¶ 40 With the possible exception of *Bolton,* in which the Arizona Supreme Court never reached the "close question" whether the trial court abused its discretion because it concluded that any error was harmless, 182 Ariz. at 303, 896 P.2d at 843, Arizona case law is bereft of any support for the majority's contrary conclusion that the trial court abused its discretion because it did not explain why it denied defendant's request to sanitize the remaining priors. *See, e.g., Williams,* 144 Ariz. at 439, 698 P.2d at 684 (rejecting defendant's contention that the trial court erred by permitting the state to impeach defendant with a similar prior offense without making specific findings of fact); *Perkins,* 141 Ariz. at 285, 686 P.2d at 1255 ("Further, although when the prior felony is identical to the pending charges, trial courts on occasion have limited the admissible evidence to the fact of a prior felony conviction, *such a procedure is not required.*") (emphasis supplied) (citations omitted); *State v. Harrison,* 195 Ariz. 28, 33, ¶ 23, 985 P.2d 513, 518 (App.1998) (trial court

permitted state to use prior aggravated assault conviction to impeach defendant charged with aggravated assault: "The trial court's ruling did not 'sanitize' the prior conviction.... That aspect of the ruling is within Rule 609 and is not in dispute.").[4]

¶ 41 Indeed, some jurisdictions have gone so far as to specifically disapprove of the practice of sanitizing priors because it prevents the fact finder from making an individualized assessment regarding the weight that a previous conviction has on a witness's credibility. *See, e.g., Bells v. Maryland,* 134 Md. App. 299, 759 A.2d 1149, 1154-55 (2000) (sanitized prior conviction leaves a jury "completely unable to assess what, if any, impact a 'prior felony conviction' has upon a witness's veracity."); *Commonwealth v. Ioannides,* 41 Mass.App.Ct. 904, 668 N.E.2d 845, 846 (1996) ("Masking the nature of prior offense ... is more likely to affect the defendant unfairly than receipt in evidence of the unvarnished conviction."); *People v. Van Dorsten,* 409 Mich. 942, 298 N.W.2d 421, 421 (1980) ("It is improper to impeach a defendant by telling the jury only of the existence of unnamed prior felony convictions, without providing the names of the offenses. It is the nature, rather than the fact, of a prior felony conviction which the jury is to use in its evaluation of credibility.").

¶ 42 The trial court admitted six of defendant's prior convictions for impeachment after finding that the probative value of the convictions outweighed the prejudicial effect. The trial court disallowed the two convictions that specifically referenced the use of weapons. Defendant relied on a mere presence defense; thus, his credibility was in issue. Therefore, I am unable to conclude that the trial court abused its considerable discretion under Rule 609(a). *See State v. Moya,* 138 Ariz. 12, 14, 672 P.2d 964, 966 (App.1983)

---

**4.** The majority's reliance on *Old Chief* is misplaced. *Old Chief* was charged under a statute prohibiting possession of a firearm by anyone with a prior felony conviction. 519 U.S. at 175, 117 S.Ct. 644. He claimed that he was unfairly prejudiced in violation of Rule 403 of the Federal Rules of Evidence because the specifics of his previous offense—assault causing serious bodily injury—were revealed to the jury despite his offer to stipulate to his prior-conviction status. *Id.* The issue before the United States Supreme Court was whether the trial court abused its discretion under Rule 403 when it rejected the defendant's offer, not whether prior convictions admitted for impeachment purposes under Rule 609(a) should be sanitized.

344

(upholding trial court's ruling that permitted state to impeach a defendant with eleven prior felony convictions, some of which were for the same offense for which the defendant was on trial). Because the majority nonetheless affirms defendant's convictions, I concur in the result.