799 P.2d 876

**STATE of Arizona, Appellee,**

v.

**Freddie Arthur ANAYA, Appellant.**

**No. 1 CA–CR 88–1274.**

Court of Appeals of Arizona, Division 1, Department D.

June 28, 1990.

Review Denied Nov. 14, 1990.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Criminal Div., and Gerald R. Grant, Asst. Atty. Gen., Phoenix, for appellee.

Gilcrease & Martin by James C. Martin, Tempe, for appellant.

## OPINION

TAYLOR, Judge.

Appellant Freddie Arthur Anaya ("defendant") was charged by information with two counts of aggravated assault in violation of A.R.S. § 13–1204, and one count of reckless endangerment in violation of A.R.S. § 13–1201. Subsequently, the prosecution alleged that the offenses were of a dangerous nature. The jury found defendant guilty of all charges. Defendant was sentenced to a mitigated sentence of one and one-half years on the endangerment charge and a mitigated term of five years on each assault charge, with all sentences to run concurrently. Defendant filed a timely notice of appeal of the judgments of conviction and sentences. We affirm.

## FACTS

The facts taken in the light most favorable to sustaining the verdict are as follows. On July 2, 1987, the defendant was drinking beer with a friend in the afternoon and evening. Later that evening he was involved in a fight with another patron at a Flagstaff bar and ejected. He returned home about 11:00 P.M., obtained a hunting rifle, and commented to his wife that he was going to kill someone or get killed. Defendant then left the house with the rifle and drove away. Between 11:30 P.M. and midnight, he returned home and fired his rifle twice while in the front yard, then entered his home intending to obtain a second rifle. When his wife told him that she had hidden that rifle, he angrily threatened to shoot her, then struck her twice in the shoulder and back with his rifle. As Mrs. Anaya walked ahead of him to the garage to retrieve the other rifle, he fired a third shot outside in the yard. While the defendant recovered the hidden rifle, Mrs. Anaya fled the scene by auto around midnight to summon help, leaving the couple's two small children asleep in the house.

Mrs. Anaya drove about one and one-half miles to a local fastfood restaurant where her daughter was working to warn her not to return home. She then called the police emergency number from the restaurant at 12:13 A.M. to report the situation at her home and to request help. Within a minute of receiving the police dispatcher's notification, Sergeant Blair of the Flagstaff Police Department arrived at the restaurant, and Mrs. Anaya rushed out to meet him. Sergeant Blair then drove Mrs. Anaya back to her home while she recounted the prior events and expressed fear for the safety of her children and husband. Police officers encircled the defendant's home, and by the use of a neighbor's phone initiated direct contact with him at about 12:25 A.M. Defendant refused requests to leave the house without his weapons to talk with the officers, and a confrontational standoff developed. The defendant let one of his children out of the house shortly after 1:30 A.M. to join Mrs. Anaya, but convinced the other to remain inside with him.

During the nightlong standoff the defendant verbally threatened the police officers with deadly harm, including telling police negotiator Sergeant Vesely that he had his cross hairs right between Vesely's eyes and could "take him out." About 4:20 or 4:30 A.M. that morning, Mrs. Anaya was interviewed by police Corporal Manson and again related the events preceding her midnight call to the police. She also revealed a large red, swollen mark on her shoulder which she attributed to the blow from defendant's rifle. Later that morning, a friend of the defendant convinced him to surrender his weapons, and around 8:30 A.M. the defendant allowed police officers to peacefully enter the house. Charges were thereafter filed, and the matter proceeded to trial approximately one year later. Defendant did not testify at trial.

On appeal, defendant raises the following issues:

(1) Did the trial judge err in admitting hearsay testimony?

(2) Was defendant denied his right to confront the witnesses against him?

(3) Was the information in this case defective?

(4) Did the state fail to prove all the elements of endangerment?

## HEARSAY TESTIMONY

At trial, the prosecution's first witness was Sherry Anaya, the defendant's wife. Mrs. Anaya proved to be a difficult witness. She gave unresponsive answers to the prosecutor's preliminary questions. When asked if she would answer his questions, she replied that she did not want her husband to go to prison. At this point, the court recessed to advise Mrs. Anaya that she must testify truthfully. Mrs. Anaya tried to assert a marital privilege, but the trial judge explained it did not apply. The judge also advised Mrs. Anaya that if she failed to recall something, she could testify that she didn't remember, but she must respond to the questions.

When trial resumed, Mrs. Anaya denied any recall of the events of July 2 and 3. When the prosecutor attempted to refresh

her memory from a police report compiled in part from her two accounts to the police the night of the standoff, she continued to deny any recollection of conversations with Sergeant Blair or Corporal Manson. The state then sought to admit into evidence the report reciting her accounts to the police that night. Defense counsel objected on hearsay grounds but was overruled, and the report was admitted under two exceptions to the hearsay rule. The first was the catchall exception under Rule 804(b)(5), Arizona Rules of Evidence, 17A A.R.S. The court specifically found that Mrs. Anaya's asserted loss of recall was deceptive and declared her unavailable as a witness under Rule 804(a)(2) (refusal to testify). The second ground was the excited utterance exception under Rule 803(2). Police testimony of her statements was also admitted.

Defendant asserts for the first time on appeal that the trial court erred in characterizing and admitting Mrs. Anaya's statements as hearsay. Defendant urges that her statements were not hearsay but prior inconsistent statements under Rule 801(d)(1)(A), and therefore inadmissible for substantive purposes under *State v. Cruz,* 128 Ariz. 538, 627 P.2d 689 (1981), and *State v. Allred,* 134 Ariz. 274, 655 P.2d 1326 (1982).

■ For purposes of Rule 801(d)(1)(A), Arizona law draws a distinction between a true and a feigned loss of recall. Where the asserted loss is genuine, the prior statement is deemed not inconsistent under this rule, but if the loss is mere fakery, the statement falls within the rule. *State v. Just,* 138 Ariz. 534, 544, 675 P.2d 1353, 1363 (App.1983), *rev. den.* (1984). In this case, the trial judge specifically found the witness to be deceitful in asserting loss of memory. However, the trial court had no need to reach a *Cruz/Allred* analysis under a prior inconsistent statement theory because it found the statements made by Mrs. Anaya to be reliable and admissible under the catchall exception to the hearsay rule, as well as excited utterances.

■ Although counsel has submitted considerable argument on the admissibility of Mrs. Anaya's statements under *Cruz* and *Allred,* we need not consider that issue because the police report of her statements was actually admitted by the trial court only under the hearsay exceptions. Furthermore, since we find the excited utterance exception by itself to be proper and sufficient grounds for admission, we need not address the issue of admissibility under the Rule 804(b)(5) catchall exception. *See State v. Whitney,* 159 Ariz. 476, 482–83, 768 P.2d 638, 644–45 (1989).

■ To properly admit an excited utterance under Rule 803(2), three factual requirements must be met: (1) there must have been a startling event; (2) the statement must relate to the startling event; and (3) the statement must be made spontaneously, that is, soon enough after the event so as not to give the declarant time to fabricate. *E.g., State v. Jeffers,* 135 Ariz. 404, 419, 661 P.2d 1105, 1120, *cert. denied,* 464 U.S. 865, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983). Absent a clear abuse of discretion, an appellate court will not reverse a trial court ruling under this exception. *Id.; State v. Carr,* 154 Ariz. 468, 470, 743 P.2d 1386, 1388 (1987). We find in the record sufficient facts to satisfy these requirements for admission of the statements. Mrs. Anaya's accounts to the police described unquestionably startling events: her intoxicated, angry husband brandishing high-powered rifles at home late at night with two children ages eight and ten years present; announcing that "I will get killed or kill somebody"; actually firing three shots outside their house; pointing a rifle at her upper body and threatening "I'm going to blow a hole in you"; and striking her twice with the butt of a rifle.

These events occurred between 11:00 P.M. and midnight. Between about 12:15 A.M. and 12:25 A.M., Mrs. Anaya related the incidents to Sergeant Blair as they drove to the Anaya residence in his police vehicle. This first statement to the police clearly related to the startling events as did the second statement to Corporal Manson about four hours later.

We find that both statements could be made spontaneously before Mrs. Anaya had time to reflect and fabricate. The spontaneity of a statement is determined from the totality of the circumstances. *See, e.g., State v. Barnes,* 124 Ariz. 586, 589–90, 606 P.2d 802, 805–06 (1980). Among the elements usually examined are the time factor between the event and statement, the physical and emotional condition of the declarant, and the nature of the offense. *See State v. Rivera,* 139 Ariz. 409, 411–12, 678 P.2d 1373, 1375–76 (1984).

Since before statehood our supreme court has consistently found the physical and emotional condition of the declarant at the time of the statement to affect spontaneity more than the mere lapse of time between the event and statement.[1] In promulgating the Arizona Rules of Evidence, our supreme court incorporated this approach by adopting the Federal Rules of Evidence definition of excited utterance as a "statement describing or explaining an event or condition made while the declarant was under the stress of excitement caused by the event or condition." Rule 803(2). *See also* Rule 803(2), Federal Rules of Evidence, and "Advisory Committee's Note", 56 F.R.D. 183, 303 (standard of measurement of time factor is duration of the state of excitement).

Mrs. Anaya gave her first statement to the police within one-half hour after fleeing her house. Officer Blair described her as "crying, very hysterical" when he met her at the restaurant. Blair further testified about her emotional condition as they returned to her house:

Q. How did she express her concern for the welfare of her children to you?

A. She was quite concerned. She kept telling me about his violent acts and what he had done and the fact that he was intoxicated.

Q. And what was her worry in regards to the children?

A. That the children would somehow become injured or possibly shot.

Q. Did she specify to you at any time shot by whom?

A. I don't recall specifically saying that Mr. Anaya would shoot the children, but it was obvious from the way Mrs. Anaya was crying, the way that she described her husband's actions, there was no doubt that she was concerned that her husband would either injure or shoot the children.

The evidence clearly supports an inference that Mrs. Anaya made her first statement while under the stress of excitement from both a startling incident a short time before and the unresolved crisis at her house that flowed naturally and without break from that event.

■ When Mrs. Anaya gave her second statement some four hours later, her young daughter Tiffany was still with the defendant inside the surrounded house. Corporal Manson described her demeanor then as "distraught. She's still crying. She expresses this absolute sick worry about the remaining child." He further testified about her preoccupation with her daughter's safety:

A. That's right in the forefront of her thoughts. That's the topic that she brings up most frequently is, you know, I have got to get this child, you know, her baby, her daughter, Tiffany, out of here, and, you know, this guy's unpredictable, he is violent, you know, who knows what's gonna go on in there, we have got to get her out of there.

1. *See Soto v. Territory,* 12 Ariz. 36, 39, 94 P. 1104, 1105 (1908) (physical shock or great nervous excitement); *Keefe v. State of Arizona,* 50 Ariz. 293, 298–99, 72 P.2d 425, 427 (1937) (stress of nervous excitement and shock); *State v. Owen,* 94 Ariz. 404, 407, 385 P.2d 700, 701 (1963), *vacated on other grounds,* 378 U.S. 574, 84 S.Ct. 1932, 12 L.Ed.2d 1041 (1964), *appeal after remand,* 101 Ariz. 156, 158, 416 P.2d 589, 591 (1966), *cert. denied,* 388 U.S. 915, 87 S.Ct. 2128, 18 L.Ed.2d 1356 (1967) (nervous excitement); *State v. Randolph,* 99 Ariz. 253, 255–56, 408 P.2d 397, 399 (1965) (same); *Barnes,* 124 Ariz. at 589–90, 606 P.2d at 805–06 (state of shock); *Jeffers,* 135 Ariz. at 420, 661 P.2d at 1121 (stress and excitement); *State v. Yslas,* 139 Ariz. 60, 65, 676 P.2d 1118, 1123 (1984) (physical and emotional condition); *Rivera,* 139 Ariz. at 411–13, 678 P.2d at 1375–77 (same); *Whitney,* 159 Ariz. at 483, 768 P.2d at 645 (same).

Testimony that a declarant still appeared nervous or distraught and that there was a reasonable basis for continuing emotional upset can be sufficient proof of spontaneity even where the interval between the startling event and the statement is long enough to permit reflective thought. *Whitney*, 159 Ariz. at 483, 768 P.2d at 645 (citing McCORMICK ON EVIDENCE); *Rivera*, 139 Ariz. at 411, 678 P.2d at 1375 (same); cf. *Barnes*, 124 Ariz. at 589–90, 606 P.2d at 805–06 (state of shock or demeanor and actions altered after event). Both conditions can be satisfied from this record. Officer Manson's testimony expressly described Mrs. Anaya as distraught during her statement to him, and the threat of harm to her child and husband still inside the house was a reasonable basis for her continuing emotional upset at that time.

■■■ Where the stress of nervous excitement and shock from a startling event has died away, a statement about that event elicited by the shock of another event which revives a memory of the prior event is not spontaneous for purposes of the prior event. *Rivera*, 139 Ariz. at 411–12, 678 P.2d at 1375–76; *Keefe*, 50 Ariz. at 298–99, 72 P.2d at 427. But where the nervous excitement from a startling event has not abated, a statement made after the event can be spontaneous where there is no break or letdown in the continuity of the transaction, *Owen*, 94 Ariz. at 407, 385 P.2d at 701 (spontaneous statement 1½ hours after rape); or it is logically related to or growing out of the main event. *See State v. Urbauer*, 109 Ariz. 584, 586, 514 P.2d 717, 719 (1973), *cert. denied*, 415 U.S. 950, 94 S.Ct. 1474, 39 L.Ed.2d 566 (1974) (statement not spontaneous 4½ hours after rape). Cf. *State v. Starcevich*, 139 Ariz. 378, 678 P.2d 959 (App.1983), *rev. den.* (adult statement spontaneous 9 hours after rape).[2] The evidence in this record reasonably indicates that Mrs. Anaya experienced a startling event shortly before her first statement. We also find evidence to infer that her excited mental state was prolonged by the tense standoff growing out of and logically related to the prior event as a continuous transaction, and that her nervous excitement neither abated nor died between the first and second statements. Police negotiator Vesely testified that during his second phone call to the Anaya home after the standoff began, Mrs. Anaya was beside him, was "extremely concerned about the children" and asked him "to try and get the children to come outside". When the younger child was later allowed out of the house, the boy "was extremely upset and crying and the mother was totally involved in taking care of him." Officer Manson testified to her visible anxiety about the other child in the house when he interviewed her later. Under the totality of these circumstances, we find no abuse of discretion in the admission of her second statement as a spontaneous excited utterance pertaining to the startling event four and one-half hours earlier. Cf. *Whitney*, 159 Ariz. at 483, 768 P.2d at 645 (successive statements under stress to different police officers twenty and forty minutes after event held excited utterances); *State v. Perry*, 116 Ariz. 40, 48, 567 P.2d 786, 794 (App.1977) (successive statements under stress to cousin and police officer after event held excited utterances).

## RIGHT TO CONFRONTATION

Defendant asserts that his right of confrontation, guaranteed under the Sixth Amendment to the United States Constitution, was violated by admission of Mrs. Anaya's statements to the police, since her alleged loss of memory on the witness stand denied him meaningful opportunity to cross-examine her on their substance. *See generally* Ariz. Const. art. II, § 24.

---

**2.** For other jurisdictions, *State v. St. Jean*, 469 A.2d 736 (R.I.1983) (adult statement spontaneous 3–5 hours after robbery); *State v. Stafford*, 237 Iowa 780, 23 N.W.2d 832 (1946) (adult statement spontaneous 14 hours after brutal assault by spouse); *People v. Chatman*, 110 Ill.App.3d 19, 65 Ill.Dec. 778, 441 N.E.2d 1292 (1982) (child statement spontaneous 18 hours after saw father shot); *People v. Robinson*, 94 Ill.App.3d 304, 49 Ill.Dec. 879, 418 N.E.2d 899 (1981), *rev. den.* (child statement spontaneous 16 hours after raped); *Gross v. Greer*, 773 F.2d 116 (7th Cir.1985) (child statement spontaneous 12 hours after witnessed murder).

■ The primary concern of the confrontation clause is to assure that the jury has an adequate basis upon which to evaluate the truth of a statement. *Jeffers,* 135 Ariz. at 421, 661 P.2d at 1122. Cross-examination, although preferred, is not the sole method by which the confrontation clause may be satisfied. *Id.*

Although Mrs. Anaya was called as a prosecution witness, the record shows that her claimed loss of memory on direct examination camouflaged her refusal to testify against her husband. She admitted she did not want the defendant to go to prison. She was briefly cross-examined by defense counsel on her statements in the police report. She was also called later as a defense witness. Defendant was never denied an opportunity at trial to physically confront and cross-examine Mrs. Anaya about her statements to the police. The narrow issue raised is whether Mrs. Anaya's particular refusal to testify about the incident described in her statements or the circumstances of their utterance rendered them inadmissible under the confrontation clause because her refusal effectively denied defendant the opportunity to test their reliability by cross-examining her about their substance and origin.

■ We note first that the confrontation clause does not guarantee that every prosecution witness will refrain from testimony marred by forgetfulness, confusion or evasion. The right of confrontation is generally satisfied where the defense is given a full and fair opportunity to probe and expose such infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony. *Delaware v. Fensterer,* 474 U.S. 15, 21–22, 106 S.Ct. 292, 295–96, 88 L.Ed.2d 15 (1985). *Cf. State v. Romanosky,* 162 Ariz. 217, 226, 782 P.2d 693, 702 (1989). The jury had some opportunity to observe the demeanor of Mrs. Anaya on the witness stand. Such observations often play a major role in their assessment of credibility. *Barker v. Morris,* 761 F.2d 1396, 1403 (9th Cir.1985), *cert. denied,* 474 U.S. 1063, 106 S.Ct. 814, 88 L.Ed.2d 788 (1986) (prior testimony admissible under confrontation clause where declarant unavailable to testify at trial).

In *Whitney,* our supreme court directly addressed the issue of whether admission of successive extrajudicial statements to police under the excited utterance exception violated the confrontation clause when the declarants were unavailable to testify. 159 Ariz. at 483–84, 768 P.2d at 645–46. Those statements were found admissible under the confrontation clause test articulated by the federal appeals court in *Barker.* This two-prong test permits admission of out-of-court statements that are both necessary and reliable. *Id.; see Barker,* 761 F.2d at 1399. In *United States v. Nick,* the same federal appeals court previously declared in this regard:

> In a criminal trial, probative evidence, otherwise admissible, may nevertheless be excluded to protect constitutional values that are deemed to weigh more heavily in the scales of justice. The values inhering in the confrontation clause cannot be effectively preserved by any mechanical application of the hearsay rule. The question in each case must be whether a particular hearsay declaration, otherwise admissible, has such great probative value as evidence of a material fact and such a high degree of trustworthiness under all of the circumstances that its reception outweighs any risk to a defendant that unreliable evidence may be received against him, the deficiencies of which he cannot adequately test because he cannot cross-examine the declarant.

604 F.2d 1199, 1203 (9th Cir.1979) (excited utterance admissible under confrontation clause where declarant unavailable to testify at trial).

■ Applying this test to the instant case, we first find that admission of Mrs. Anaya's statements to the police was necessary to prosecute the defendant on the aggravated assault charges. Given Mrs. Anaya's refusal at trial to testify to the events from which the charges arose, the statements were the only direct evidence of the assault upon her and indispensable to a viable prosecution.

The reliability prong requires the statements to have particular guarantees of trustworthiness. *Barker*, 761 F.2d at 1400. The trustworthiness of spontaneous statements is established on grounds distinct from the general credibility of the declarant. *Shaffer v. Field*, 484 F.2d 1196, 1197 (9th Cir.1973); *State v. Yee*, 121 Ariz. 398, 402, 590 P.2d 937, 941 (App.1978), *rev. den.*, (1979) (excited utterance). There is no mechanical test for determining reliability, and each case must be evaluated on its own facts. *Barker*, 761 F.2d at 1400, 1403. *See State v. Hughes*, 120 Ariz. 120, 127, 584 P.2d 584, 581 (App.1978), *rev. den.*

We find sufficient guarantees in the record to satisfy this second prong. First, contact with the police on the night of the incident was initiated by Mrs. Anaya and her statements were voluntarily given at that time. *Barker* declared voluntariness to be an important index of reliability. 761 F.2d at 1401. We recognize, however, that a fabricator who initiates contact with the police can also act voluntarily. Thus, voluntariness may be a more reliable index under some factual situations than others. Here, Mrs. Anaya reported an incident involving a family member that was susceptible to immediate investigation and confirmation as it continued to unfold. Second, the statements were made to law enforcement officers whose experience and training in investigating and recording the circumstances and details of such events were presented to the jury. Third, as excited utterances the statements fall within a firmly rooted exception to the hearsay rule, *Yslas*, 139 Ariz. at 65, 676 P.2d at 1123; *Jeffers*, 135 Ariz. at 422, 661 P.2d at 1123; bearing "all the indicia of reliability which has led to the creation of a narrow exception to the rule against hearsay." *Carr*, 154 Ariz. at 471–72, 743 P.2d at 1389–90. Prior to *Whitney*, our supreme court had declared that any evidence falling within such an exception would for that reason alone generally satisfy the reliability requirement. *Yslas*, 139 Ariz. at 65, 676 P.2d at 1123; *Jeffers*, 135 Ariz. at 422, 661 P.2d at 1123. *But see State v. Butcher*, 120 Ariz. 234, 236, 585 P.2d 254, 256 (App. 1978), *rev. den.* However, *Barker* recog-

nized that many hearsay statements contain sufficient indicia of reliability to be admissible for confrontation clause purposes under the *Nick* standard. *See* 761 F.2d at 1401.

Finally, the statements were corroborated by independent circumstantial evidence. When the police first arrived at the Anaya home, they found the very conditions reported by Mrs. Anaya—the defendant inside with the children, intoxicated, armed and belligerent. Her two statements to the police were apparently identical, despite the lapse of four hours, and her mental condition of shock and nervous excitement during her statements was an appropriate response to the incident she claimed to have experienced. Corporal Manson testified that he was unaware of the first statement when he interviewed her later. Furthermore, the bruise Manson observed on Mrs. Anaya's shoulder lent credence to her claim that defendant struck her with his rifle. Corroboration is a recognized indicium of reliability in confrontation clause analysis. *Barker*, 761 F.2d at 1402. *See Jeffers*, 135 Ariz. at 422, 661 P.2d at 1123; *Whitney*, 159 Ariz. at 484, 768 P.2d at 646. We find that the admission into evidence of Mrs. Anaya's statements by way of the police report and police testimony did not violate defendant's right of confrontation.

## SUFFICIENCY OF THE INFORMATION

In the information filed on July 29, 1987, defendant was charged with reckless endangerment. The charge in the information stated that defendant recklessly endangered another person, but did not specify which person. Defendant now maintains that the information was insufficient as a matter of law.

Defendant has waived review of this issue. He did not make an appropriate pretrial motion raising the question of an insufficient information. Defendant is now precluded from raising the issue by Rule 13.5.c, Arizona Rules of Criminal Procedure. *State v. Bailey*, 125 Ariz. 263, 266, 609 P.2d 78, 81 (App.1980), *rev. den.; State*

*v. Woodall,* 155 Ariz. 1, 7, 744 P.2d 732, 738 (App.1987), *rev. den.*

## PROOF OF ENDANGERMENT

Defendant claims that the trial judge should have granted his motion for directed verdict on the endangerment count because there was no proof of a substantial risk of imminent death or physical injury as required by A.R.S. § 13–1201. The state responds that police observation of the defendant waving a rifle barrel out his door, coupled with verbal threats of deadly harm to the police and the guns and ammunition actually surrendered later, were sufficient proof that defendant created an imminent danger to both the police and defendant's children.

 A directed verdict should not be granted if evidence is such that reasonable minds may differ on inferences to be drawn therefrom. *State v. Paoletto,* 133 Ariz. 412, 416, 652 P.2d 151, 155 (App.1982), *rev. den.* The substantial evidence required for conviction may be either circumstantial or direct, and the probative value of the evidence is not reduced simply because it is circumstantial. *State v. Blevins,* 128 Ariz. 64, 67, 623 P.2d 853, 856 (App.1981). Evidence wholly circumstantial can support differing, yet reasonable inferences sufficient to defeat a motion for directed verdict. *See State v. Nelson,* 129 Ariz. 582, 587, 633 P.2d 391, 396 (1981).

In this case, no one actually saw the defendant aim or point a loaded gun directly at his children or any of the police officers. But among the circumstantial evidence before the jury was that the defendant fired shots with a rifle before the police arrived, warned Sergeant Vesely that he had his cross hairs right between his eyes and could "take him out", yelled other threats, was seen to wave a rifle barrel out his door, and possessed firearms and ammunition inside the house. This evidence could lead the jury to infer that defendant indeed pointed a loaded gun at officers sometime that evening. The trial judge did not err in denying the motion for judgment of acquittal.

For the foregoing reasons, the convictions and sentences are affirmed.

BROOKS, P.J., and FIDEL, J., concur.