107 P.3d 350

The STATE of Arizona, Appellee,

v.

Israel Joaquin ALVAREZ, Appellant.

No. 2 CA–CR 2002–0084.

Court of Appeals of Arizona,
Division 2, Department B.

Jan. 24, 2005.

Terry Goddard, Arizona Attorney General, By Randall M. Howe and Jon G. Anderson, Phoenix, for Appellee.

Robert J. Hooker, Pima County Public Defender, By John Seamon, Tucson, for Appellant.

FLÓREZ, Presiding Judge.

¶ 1 After a jury trial, Israel Joaquin Alvarez was convicted of felony murder and aggravated robbery. The trial court sentenced him to concurrent prison terms of life and 6.5 years. He argues on appeal that the trial court erred in instructing the jury, denying his motion for a judgment of acquittal, admitting hearsay evidence, and dismissing a prior case on the same facts without prejudice. We affirm his convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶ 2 We view the facts in the light most favorable to upholding the convictions. *See State v. Greene*, 192 Ariz. 431, 967 P.2d 106 (1998). The evidence showed that Alvarez and S. had been together for two or three days in June 2001, smoking crack cocaine. After they met Ramon Cruz and Warren Nixon, the four took a drive in S.'s rented white Chevrolet Cavalier. At some point, the four went to a desert area to smoke more crack cocaine. According to Alvarez, Nixon then said he wanted to take the car from S., and Nixon and Cruz pulled S. out of the car and beat him. Nixon, Cruz, and Alvarez then drove away in the rental car.

¶ 3 Deputy Sheriff Maurice Othic found S. staggering down a road around 3:00 p.m. on June 10, with blood "all in his hair and all on his face." Othic said S. had "pretty much collapsed" on the trunk of the patrol vehicle and had slipped in and out of consciousness. Othic was able to learn S.'s first name. Before S. lost consciousness again, he told Othic three men had "jumped him and [had taken] his '95 white Suzuki."

¶ 4 In May 2001, S. had reported to police that his Suzuki had been stolen. In June, S. was driving a rental car, a white Chevrolet Cavalier. A customs inspector stopped the Cavalier about 4:30 p.m. on June 10 at the international border because its occupants were "looking out the windows ... [and] didn't seem like they knew where they were going." The men had no identification, and Alvarez gave conflicting stories about who owned the car. In the car, the inspector found a rental contract with S.'s name on it and called the rental company, whose representative asked him not to allow the three men to take the car to Mexico. Alvarez then walked into Mexico.

¶ 5 On June 12, S. died from multiple blunt force injuries to his head. His blood was found on clothing belonging to Alvarez, Cruz, and Nixon and on two concrete blocks found at the murder scene.

## JURY INSTRUCTIONS

*Portillo instruction*

■ ¶ 6 Alvarez first argues that the reasonable doubt instruction our supreme court adopted in *State v. Portillo*, 182 Ariz. 592, 898 P.2d 970 (1995), is unconstitutional because it fails to adequately direct that only the state has the burden of proof. Our supreme court has repeatedly rejected similar arguments challenging this instruction. *State v. Dann*, 205 Ariz. 557, 74 P.3d 231 (2003); *State v. Lamar*, 205 Ariz. 431, 72 P.3d 831 (2003); *State v. Van Adams*, 194 Ariz. 408, 984 P.2d 16 (1999). Because we have no authority to overrule the supreme court, *City of Phoenix v. Leroy's Liquors, Inc.*, 177 Ariz. 375, 868 P.2d 958 (App.1993), we do not address the issue.

*Felony murder instruction*

■ ¶ 7 The trial court gave the following jury instruction:

The crime of first degree felony murder requires proof of the following two things: The defendant committed or attempted to commit aggravated robbery or robbery; and, in the course of and in furtherance of this crime or immediate flight from the crime, the defendant or another person caused the death of any person.

With respect to the felony murder rule, in so far as it provides the basis for a charge of first degree murder, it is the law that there is no requirement that the killing occurred while committing or engaged in the felony, or that the killing be a part of the felony. The homicide need not have been committed to perpetrate the felony. It is enough if the felony and the killing were part of the same series of events.

At trial, Alvarez objected to the language in the second paragraph, arguing it was not an accurate statement of the law. On appeal, he contends that the language does not appear in the statute enumerating the elements of felony murder, *see* A.R.S. § 13–1105(A)(2), and that "the addition of the instruction is totally confusing to a jury and has in fact been disapproved." Furthermore, he posits, the "objected [to] instruction clarifies nothing and in fact appears diametrically opposed to the statutory language." We review de novo whether a jury instruction correctly stated the law. *State v. Orendain,* 188 Ariz. 54, 932 P.2d 1325 (1997).

¶ 8 Alvarez is not entirely correct that the language in the second paragraph of the instruction has been disapproved. The same language to which Alvarez objects was given in *State v. Miles,* 186 Ariz. 10, 918 P.2d 1028 (1996), over the defendant's objection. Although our supreme court discouraged using the language, it held that, taken as a whole, the instruction there had not misled the jury, noting there was "no doubt that the murder was [committed] 'in furtherance of' the robbery." *Id.* at 15, 918 P.2d at 1033. In *Miles,* the victim had been murdered to obtain her car and its contents. Similar evidence was presented here. S. was severely beaten so the perpetrators could obtain his car and its contents. Accordingly, although we acknowledge that this instruction is not preferred by

the supreme court, we see no reversible error. *See Miles.*

¶ 9 Alvarez next criticizes the language as "totally unnecessary even if it was not confusing" and as an "inartful" attempt to define "in furtherance of." Because he has failed to develop the argument with legal authorities, we do not address it. *See* Ariz. R.Crim. P. 31.13(c)(vi), 17 A.R.S.

## MOTION FOR JUDGMENT OF ACQUITTAL

¶ 10 Alvarez next argues that the trial court erred in denying his motion for a judgment of acquittal, made pursuant to Rule 20, Ariz. R.Crim. P., 17 A.R.S. He contends the evidence was insufficient to sustain his conviction for either felony murder or aggravated robbery, either as a principal or an accomplice. We review the denial of a motion for judgment of acquittal for an abuse of discretion. *State v. Henry,* 205 Ariz. 229, 68 P.3d 455 (App.2003). A judgment of acquittal should be granted "if there is no 'substantial evidence' to support the conviction." *State v. Sullivan,* 187 Ariz. 599, 603, 931 P.2d 1109, 1113 (App.1996), *quoting State v. Atwood,* 171 Ariz. 576, 597, 832 P.2d 593, 614 (1992), *overruled on other grounds by State v. Nordstrom,* 200 Ariz. 229, 25 P.3d 717 (2001). We will reverse a trial court's denial of a Rule 20 motion only if there is "a complete absence of probative facts to support a conviction." *State v. Mathers,* 165 Ariz. 64, 66, 796 P.2d 866, 868 (1990). If reasonable minds can differ on the inferences to be drawn from the evidence, a trial court has no discretion to enter a judgment of acquittal and must submit the case to the jury. *State v. Landrigan,* 176 Ariz. 1, 859 P.2d 111 (1993).

¶ 11 Substantial evidence supports Alvarez's convictions. S.'s statement, Alvarez's confession, the testimony that S.'s blood had been found on Alvarez's shoe, and the testimony of the customs inspector about Alvarez's behavior at the border constituted sufficient evidence to require the trial court to submit the case to the jury.

¶ 12 Alvarez argues that only S.'s statement—that *three* men had "jumped him"—

inculpated Alvarez and that the other evidence only placed him at the scene. He also contends S.'s statement was hearsay. In fact, S.'s statement to Othic did not name Alvarez or describe him. Only when connected to other evidence does S.'s statement inculpate Alvarez. In any event, even disregarding S.'s statement, the state presented sufficient evidence from which a reasonable jury could have inferred that Alvarez had been more than a "passive observer." The trial court thus did not abuse its discretion in denying Alvarez's Rule 20 motion.

## ADMISSION OF S.'S STATEMENT

*Hearsay*

■ ¶ 13 Alvarez asserts that the trial court erroneously admitted as an excited utterance S.'s statement that three men had "jumped him" and had taken his car, arguing the necessary foundational requirements for its admission were lacking. We will not disturb a trial court's ruling admitting or excluding evidence absent a clear abuse of discretion. *State v. Whitney*, 159 Ariz. 476, 768 P.2d 638 (1989). An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Ariz. R. Evid. 803(2), 17A A.R.S. "'The modern trend is toward a liberal interpretation of [the excited utterance] exception, leaving admissibility largely to the discretion of the trial court.'" *Whitney*, 159 Ariz. at 484, 768 P.2d at 646, *quoting State v. Rivera*, 139 Ariz. 409, 410, 678 P.2d 1373, 1374 (1984).

■ ¶ 14 To constitute an excited utterance, a statement must have been spontaneous so as not to give the declarant time for reflection. *Rivera.* "The spontaneity of a statement is determined from the totality of the circumstances. Among the elements usually examined are the time factor between the event and statement, the physical and emotional condition of the declarant, and the nature of the offense." *State v. Anaya*, 165 Ariz. 535, 539, 799 P.2d 876, 880 (App.1990) (citation omitted). The declarant's physical and emotional condition at the time the statement is made relates more closely to the

spontaneity requirement than the time between the event and the statement. *Id.* "If the totality of the circumstances indicates that the statement was not likely to be fabricated because of the effect of the startling event on the declarant, it will be admissible." *State v. Yslas*, 139 Ariz. 60, 65, 676 P.2d 1118, 1123 (1984).

■ ¶ 15 Alvarez first argues that S. was not under the stress of nervous excitement when he made the statement. *See State v. Beasley*, 205 Ariz. 334, ¶ 30, 70 P.3d 463, 470 (App.2003) (hearsay statement properly admitted as excited utterance "if, under the totality of the circumstances, the declarant may be considered to have made the statement under the stress of nervous excitement"). We disagree. S. was staggering, mumbling, and bleeding when he was found. He was slipping in and out of consciousness and repeatedly asking for medical help. Alvarez has offered no basis for us to disturb the trial court's ruling that S. made the statement while under the stress of the startling event. *See State v. Barnes*, 124 Ariz. 586, 589–90, 606 P.2d 802, 805–06 (1980) (statement of victim admissible as excited utterance when victim "sluggish and disoriented," not "agitated," but in "state of shock").

■ ¶ 16 Alvarez also asserts that the statement related to a different startling event than the one at issue and that S.'s statement "certainly" related to his prior car theft. Alvarez relies on the language in *State v. Bass*, 198 Ariz. 571, ¶ 23, 12 P.3d 796, 803 (2000), that "an accident cannot serve as the basis for an excited utterance where it is not the event about which the declarants had spoken." In *Bass*, however, it was clear the statements were not about the accident, the startling event there. S.'s statement is different. Although there was evidence that S.'s Suzuki had been stolen in May, there was no evidence the circumstances of that theft were at all similar to the events surrounding the theft of the Chevrolet. And, S.'s statement followed his having been beaten and robbed, and it clearly related to that attack when taken in context. The trial court did not err in finding that S.'s state-

ment related to the startling event that had just occurred.

¶ 17 Alvarez also contends the statement was not "reliable" because of the brain damage S. had sustained in the beating. But, "[o]ur courts have not attempted to confine the application of the excited utterance exception solely to indisputably reliable statements.... [Thus, a]dmission as a hearsay exception is not foreclosed by the fact that a statement's reliability has been impugned." *State v. Jeffers,* 135 Ariz. 404, 420, 661 P.2d 1105, 1121 (1983) (citations omitted) (statements of victim under influence of an intoxicant not sufficiently unreliable to preclude their admission under excited utterance exception); *see also State v. Peeler,* 126 Ariz. 254, 256–57, 614 P.2d 335, 337–38 (App.1980) (victim's statement admissible as excited utterance despite psychologist's testimony that "statements made by the victim would 'probably' be less than reliable if she was extremely agitated, but might become reliable as she grew calmer"); *State v. Yee,* 121 Ariz. 398, 590 P.2d 937 (App.1978) (statements properly admitted as excited utterance despite testimony that declarant was unreliable when excited). A witness's reliability "goes to the weight of the statements, not their admissibility." *State v. Whitney,* 159 Ariz. 476, 484, 768 P.2d 638, 646 (1989). And "the question of credibility remains for submission to the jury." *Jeffers,* 135 Ariz. at 420, 661 P.2d at 1121. Moreover, the trial court considered S.'s physical and mental condition in determining whether his statement had been spontaneous, and we have already concluded that the court did not err in finding that the statement related to the startling event that had just occurred. Therefore, we find no basis to disturb the court's determination that S.'s statement was sufficiently reliable to be admitted.

*Confrontation clause*

¶ 18 In a supplemental citation of authority, Alvarez points to the recent United States Supreme Court case of *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), as support for his contention that the trial court erred in admitting S.'s statement. In *Crawford,* the Court over-

ruled *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), and held that, when "testimonial evidence is at issue, ... the Sixth Amendment demands what the common law required: unavailability [of the declarant] and a prior opportunity for cross-examination." *Crawford,* 124 S.Ct. at 1374. We review de novo a claim that a defendant's confrontation rights were violated. *State v. Bronson,* 204 Ariz. 321, 63 P.3d 1058 (App. 2003).

¶ 19 The Court in *Crawford* expressly declined to "spell out a comprehensive definition of 'testimonial,' " holding that "it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." 124 S.Ct. at 1374. Nor did the Court expressly define "police interrogation," except to note that it used the term in its "colloquial, rather than any technical legal, sense" and that it "need not select" from the various imaginable definitions of interrogation because the statement at issue, made "in response to structured police questioning, qualifie[d] under any conceivable definition." 124 S.Ct. at 1365 n. 4.

¶ 20 Since *Crawford* was decided, lower courts have interpreted "police interrogation" to require either some type of structured police questioning, *State v. Barnes,* 854 A.2d 208, 211–12 (Maine 2004) (victim seeking help, not responding to "tactically structured police questioning as in *Crawford* "); *Hammon v. State,* 809 N.E.2d 945, 952 (Ind.Ct. App.2004) ("interrogation" under *Crawford* does not apply to "preliminary investigatory questions asked at the scene of a crime shortly after it has occurred"), or questioning aimed at "producing evidence in anticipation of a potential criminal prosecution." *People v. Kilday,* 20 Cal.Rptr.3d 161, 173 (App.2004) (police questioning conducted to determine nature and cause of victim's injuries).

¶ 21 Although S. made his statement in response to Othic's questions, the exchange could not have constituted a "police interrogation." S. did not call the police as a result of the crime that had been committed. Rather, Othic found S. staggering down a road. When Othic found S., Othic did not know that a crime had even been committed;

he simply questioned S. about his injuries to obtain medical assistance for him. Othic's questioning was neither structured nor conducted for the purpose of "producing evidence in anticipation of a potential criminal prosecution." *Kilday,* 20 Cal.Rptr.3d at 173.

¶ 22 We thus conclude S.'s statement was nontestimonial hearsay outside the scope of *Crawford.* "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law." *Crawford,* 124 S.Ct. at 1374; *see also White v. Illinois,* 502 U.S. 346, 356, 112 S.Ct. 736, 743, 116 L.Ed.2d 848, 859 (1992) (excited utterances are "materially different from the statements at issue in *Roberts,* where the out-of-court statements sought to be introduced were themselves made in the course of a judicial proceeding"). The trial court's admission of S.'s statement did not violate Alvarez's confrontation rights.

### DISMISSAL WITHOUT PREJUDICE

¶ 23 Finally, in a supplemental opening brief, Alvarez contends the trial court abused its discretion by dismissing his first case without prejudice, arguing the state was thereby granted a de facto continuance. The first indictment against Alvarez, filed in CR–20012242, was dismissed without prejudice in October 2001 because of a speedy trial violation. We have no jurisdiction to address this issue. Only the convictions in CR–20013408 are properly before us. Moreover, "[a]n order of dismissal without prejudice may not be appealed by a defendant"; the appropriate avenue of review is a petition for special action. *Duron v. Fleischman,* 156 Ariz. 189, 191, 751 P.2d 39, 41 (App.1998).

¶ 24 We affirm Alvarez's convictions and sentences.

PELANDER, C.J. and ESPINOSA, J., concurring.