NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DONALD HENRY PURCELL,[1] *Appellant.*

No. 1 CA-CR 20-0136

FILED 03-30-2021

Appeal from the Superior Court in Yavapai County
No. P1300CR201601401
The Honorable Tina R. Ainley, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Law Offices of Stephen L. Duncan, PLC, Scottsdale
By Stephen L. Duncan
*Counsel for Appellant*

---

[1]     On the court's own motion, it is ordered amending the caption in this appeal as reflected in this decision.  The above-referenced caption shall be used on all further documents filed in this appeal.

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Randall M. Howe and Judge Maria Elena Cruz joined.

---

**P E R K I N S**, Judge:

¶1        Donald Henry Purcell appeals his convictions of attempted second degree murder and two counts of aggravated assault. He argues the superior court erred in denying his motion for judgment of acquittal on all charges. Because substantial evidence supports the convictions, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2        We view the facts in the light most favorable to sustaining the verdict. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013). In November 2016, Darlene Rhodes closed the general store in Cleator and then drank a few beers at the town's only bar. While Rhodes drank, Barbara M. ("victim") walked into the bar to ask whether Rhodes spoke to Purcell about removing several items from his driveway. Rhodes then watched the victim leave the bar, walk down the road, and knock over a refrigerator in Purcell's driveway.

¶3        As Rhodes walked home, she noticed the victim's dogs (abnormally) running around outside. She then found the victim face-down on the ground. Rhodes rolled the victim over, shocked to see blood seeping out of her mouth. Rhodes ran to get her phone and called 911.

¶4        Deputy Clanton responded to the scene. After recognizing the severity of the victim's injuries, Deputy Clanton called in a helicopter to transport her to the hospital. The victim arrived with a dangerously low heart rate and low blood pressure; her heart stopped at one point, requiring resuscitation and she remained at risk of death. The victim required surgery to reconstruct her face and to address complex lacerations on her head and arms. The laceration on the left side of her head was life threatening. She also suffered intercranial bleeding and a depressed skull fracture.

¶5        While the victim received treatment for her injuries, police in Cleator investigated the attack. Rhodes and another Cleator resident, Paul Welch, informed Deputy Clanton of an ongoing dispute between Purcell and the victim. And Welch told the deputy he found Purcell's straw hat at the crime scene. Deputy Clanton and another officer, Sergeant Dannison,

eventually contacted Purcell at his home, noticing scratches and blood on his calves. Police then arrested Purcell.

**¶6** In November 2016, a Grand Jury indicted Purcell for one count of aggravated assault. The case returned to the Grand Jury in August 2017, which indicted Purcell for one count of attempted second degree murder and two counts of aggravated assault.

**¶7** Dr. Shirah testified as to the victim's injuries and the medical treatment those injuries required. Although initial reports posited the victim could have been attacked by an animal, Dr. Shirah explained the injuries were inconsistent with such an attack. Dr. Shirah concluded the weapon was narrow in width because of the nature of the victim's cuts and that the weapon carried plenty of force.

**¶8** Homicide Detective Mike Meislish testified for the prosecution as a blood spatter expert. Detective Meislish opined the blood spatter on the bottom of Purcell's hat was consistent with impact spatter. Impact spatter occurs when force is applied to a blood source. And he observed no expired spatter, which is similar to impact spatter in appearance but is distinguishable by the presence of air bubbles in the blood droplets. The front of the hat also reflected transfer stains. Detective Meislish concluded the spatter patterns indicated the blood traveled upward, spattering the bottom of the brim.

**¶9** Detective Sergeant Rick Lopez also testified. On the night of the assault, Sergeant Lopez executed a search warrant to take multiple swabs from Purcell's body. Sergeant Lopez returned to Cleator the following day to search Purcell's home, where he found a machete sheath and some blood-stained clothes on Purcell's bed. But neither Sergeant Lopez, nor anyone else, ever found a machete.

**¶10** The prosecution also called Laura Mueller, a forensic scientist for the Arizona Department of Public Safety. Mueller specializes in conducting DNA analysis for violent crimes. She analyzed numerous swabs taken from Purcell and the victim. The swabs taken from Purcell's left arm contained two DNA profiles, primarily matching the victim's DNA. And the samples from Purcell's hat presented a similar DNA mixture.

**¶11** After the prosecution rested, Purcell moved for a directed verdict of acquittal on all charges, which the court denied.

**¶12** Purcell called Weaver Barkman to testify as a blood splatter expert. Barkman opined that Purcell's hat contained high and medium

velocity blood droplets consistent with expirated blood expelled by the nose and mouth. He further explained the expirated blood patterns could have resulted from the victim coughing and/or breathing. Barkman concluded it was highly improbable for the hat to have been worn during the assault.

¶13        Purcell's girlfriend, Judy Short, testified. Short mentioned that Purcell had cancer and underwent various treatments including radiation and having his ear removed. She opined that after losing his ear, Purcell remained very weak and was physically incapable of carrying out the assault.

¶14        Purcell also testified. He stated his feud with the victim began when she and her friends began using his driveway, damaging his personal property. He downplayed the "disagreement" and rejected being upset enough to assault the victim. He also denied the victim's toppling of the refrigerator as a source of his strife because Cleator is prone to dust storms that regularly blow the fridge over.

¶15        Purcell claimed that he spent the afternoon outside, drinking alcohol, before his involvement in the victim's peril began. After his motion sensor light turned on, he noticed a "pile of junk down the middle of the driveway" and then walked towards it. "Unusual noises" captured his attention. What initially seemed like "dogs fighting or growling" began to sound like "whining and moaning." Purcell claimed to be "astonished to see that it looked like [the victim] was being attacked by her own dogs or the dogs were jumping on her." He testified to trying pull the dogs off the victim, sustaining a bite injury in the process. Then Purcell supposedly failed to lift the victim off the ground before returning home to call 911 and retrieve a first aid kit. Once he saw another vehicle arrive, Purcell claims he grabbed another drink and then got ready for bed.

¶16        The jury found him guilty on all three counts and the court found aggravating circumstances for each. The court sentenced Purcell to fifteen years of imprisonment for attempted second degree murder and ten years of imprisonment for each aggravated assault count. These sentences are to run concurrently, and the court gave Purcell 328 days of pre-incarceration credit.

¶17        Purcell timely appealed and we have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 13-4031 and -4033(A).

**DISCUSSION**

¶18        Purcell argues the court erred in denying his Rule 20 motion for acquittal on all three charges. The trial court's ruling is a question of law reviewed *de novo*, considering all facts and resolving all evidentiary conflicts in the light most favorable to sustaining the conviction. *State v. Pena*, 235 Ariz. 277, 279, ¶ 5 (2014).

¶19        Purcell specifically argues the motive presented by the State, namely the feud between Purcell and the victim, is unsupported by evidence. And Purcell appears to contend the evidence was insufficient because it was circumstantial. We reject these arguments and uphold the superior court's denial of Purcell's Rule 20 motion.

¶20        A court may enter a directed verdict of acquittal only if no substantial evidence supports the conviction. *State v. Davolt*, 207 Ariz. 191, 212, ¶ 87 (2004). "Substantial evidence is evidence that reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt." *See Pena*, 235 Ariz. at 279, ¶ 5 (quoting *State v. Hausner*, 230 Ariz. 60, 75, ¶ 50 (2012)). If reasonable minds could differ on inferences drawn from the facts, the case must be submitted to the jury and the trial court has no discretion to enter a judgment of acquittal. *State v. West*, 226 Ariz. 559, 563, ¶ 18 (2011). Even wholly circumstantial evidence can support different, but reasonable inferences. *State v. Anaya*, 165 Ariz. 535, 543 (App. 1990).

¶21        The State correctly asserts that motive, while relevant, is not a required element to be proved. *See State v. Hunter*, 136 Ariz. 45, 50 (1983). And even if the prosecution's physical evidence is entirely circumstantial, that distinction alone does not necessitate a judgment of acquittal. *See Anaya*, 165 Ariz. at 543.

¶22        Purcell next argues the record contains insufficient evidence to support his convictions. An individual is guilty of attempted second degree murder if the defendant intended or knew that his conduct would cause death. *State v. Ontiveros*, 206 Ariz. 539, 542, ¶ 14 (App. 2003).

¶23        Assault occurs when an individual intentionally, knowingly, or recklessly causes a physical injury to another person. A.R.S. § 13-1203(A)(1). To be convicted of aggravated assault, an individual must commit assault with an aggravating circumstance. A.R.S. §§ 13-1203 to -1204. The prosecution charged Purcell with two counts of aggravated assault: one count for causing serious physical injury to the victim and another count for using a deadly weapon or dangerous instrument. *See* A.R.S. § 13-1204(A)(1), (2).

¶24          The jury heard evidence identifying a motive. Multiple witnesses offered testimony about Purcell's disagreement with the victim, and Rhodes watched the victim tip over the refrigerator in Purcell's driveway. The prosecution also presented multiple pieces of evidence tying Purcell to the crime. Purcell left his hat at the crime scene. His hat, clothes, and body contained the victim's blood. Despite failing to recover an actual weapon, police found a machete sheath on Purcell's bed. Detective Meislish described how the victim's blood sprayed Purcell's hat from below and the blood did not originate from the victim's mouth or nose. He further explained how the blood spatter on Purcell's hat evidenced Purcell's use of force against the victim. And Purcell's calves were scratched. This record contains sufficient evidence to support Purcell's convictions.

## CONCLUSION

¶25          We affirm Purcell's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:          HB